## HELVERING, Com'r of Internal Revenue, v. UNION PUBLIC SERVICE CO.

### No. 10036.

Circuit Court of Appeals, Eighth Circuit.

Jan. 22, 1935.

A. F. Prescott, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

James C. Otis, of St. Paul, Minn. (Warren E. Burger, of St. Paul, Minn., and L. A. Gravelle, of Washington, D. C., on the brief), for respondent.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a decision of the Board of Tax Appeals (opinion unreported) determining an overpayment of the respondent's income tax for the fiscal year ended March 31, 1929, in the amount of $9,973.22.

The facts, as stipulated and found by the Board of Tax Appeals, are as follows: The Union Public Service Company had outstanding on June 1, 1928, its 6 per cent. first mortgage gold bonds, par value $1,011,500, dated March 1, 1923, due $10,000 annually on March 1st of each of the years 1929 to 1935, inclusive, and $960,000 on March 1, 1936. Of the issue $6,500 were held in its own treasury.

On June 1, 1928, the respondent, for the purpose of refinancing its bond obligations, issued $1,000,000 par value 5 per cent. first mortgage gold bonds, Series A, due June 1, 1958. These bonds were sold to a syndicate of investment bankers for $945,000 cash, and the proceeds from the sale were deposited with the trustee (the same for both issues) to be used in retiring the 6 per cent. bond issue. The additional funds necessary to retire the old bonds at an agreed premium of 5 per cent. were procured through the sale of the respondent corporation's preferred stock.

The $1,011,500 par value 6 per cent. bonds were called for redemption on September 1, 1928, and the principal amount of such bonds, with the exception of $1,000 thereof, together with the premium of 5 per cent. was paid to the bondholders in cash during the fiscal year ending March 31, 1929, from the funds on deposit with the trustee. The unamortized bond discount and expenses of this issue on June 1, 1928, was $72,605.-91. The premium paid in retiring the old bonds amounted to $50,250.

The respondent claimed as a deductible loss for the fiscal year ended March 31, 1929, the sum of these last two items, namely, $122,855.91. The Commissioner determined that the two bond issues were so closely interrelated that they constituted, from the taxpayer's point of view, a continuing transaction and that all unamortized discount and expense incident to the first bond issue was not a deductible loss in the year of their retirement, but a loss that should be recovered through amortization over the life of the new bonds. The Board of Tax Appeals overruled the Commissioner and held that the unrecovered bond discount and expense on account of the earlier issue, together with the premium paid upon retirement, should be recovered by deduction in the year of such retirement.

The Commissioner's regulations, Art. 68, Reg. 74, under the Revenue Act of 1928, § 23, c. 852, 45 Stat. 791, 26 USCA § 2023, provide in part as follows: "(3) (a) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. (b) If thereafter the corporation purchases and retires any of such bonds at a price in excess of the issuing price plus any amount of discount already deducted, the excess of the purchase price over the issuing price plus any amount of discount already deducted (or over the face value minus any amount of discount not yet deducted) is a deductible expense for the taxable year. (c) If, however, the corporation purchases and retires any of such

bonds at a price less than the issuing price plus any amount of discount already deducted, the excess of the issuing price plus any amount of discount already deducted (or of the face value minus any amount of discount not yet deducted) over the purchase price is gain or income for the taxable year."

The Supreme Court has recently held that if a corporation purchases and retires any of the bonds previously issued by it at a price less than the issuing price or face value, the excess of the issuing price or face value over the purchase price is gain or income for the taxable year. United States v. Kirby Lumber Co., 284 U. S. 1, 52 S. Ct. 4, 76 L. Ed. 131; Helvering, Commissioner, v. American Chicle Co., 291 U. S. 426, 54 S. Ct. 460, 78 L. Ed. 891. And it has been held that when a taxpayer exchanged $375,000 of its 7 per cent. gold bonds in retirement of $456,300 of its secured notes, taxable income was realized from the transaction in that year. Commissioner v. Coastwise Transp. Corp. (C. C. A. 1) 62 F.(2d) 332; Id. (C. C. A.) 71 F.(2d) 104.

In the instant case the taxpayer retired its 6 per cent. first mortgage bond issue at a premium of 5 per cent. in cash derived from the sale of its 1928 issue of 5 per cent. first mortgage bonds to a syndicate of investment bankers. This transaction does not involve the substitution or exchange of one issue of bonds for another. The holders of the two bond issues were obviously not the same persons. The fact that the new 5 per cent. issue was sold for the purpose of retiring the old bonds does not alter the conclusion, and the case is not distinguishable in character from one in which the old bond issue is retired before maturity out of surplus or funds made available for that purpose by some other means. There is no interrelation or continuity of transactions, but in fact the retirement of the old bonds and the issuance of the new constitute separate transactions within the plain meaning of the Treasury Regulations as approved in United States v. Kirby; Helvering v. American Chicle Co., supra; and San Joaquin Light & Power Corp. v. McLaughlin (C. C. A. 9) 65 F. (2d) 677, 679. For purposes of determining gain or loss the regulations of the Treasury Department require that each bond issue shall be treated as a separate entity. Id., page 679 of 65 F.(2d). Logically all unamortized discount and premiums properly allocable to a bond issue now retired and dead are items of cost in acquiring capital and necessary to a determination of gain or loss upon a retirement of the issue. They form no part of the expense of capital acquired through a subsequent issue marketed independently to different parties. The retirement of the old bonds in cash constituted a closed transaction and a resulting loss attributable to unamortized discount and premiums paid should be treated as realized and deductible in the year of such retirement. If gain realized in the retirement of a bond issue represents taxable income in the year of retirement (United States v. Kirby; Helvering, Com'r, v. American Chicle Co., supra), the converse necessarily represents deductible loss.

In San Joaquin Light & Power Corp. v. McLaughlin, supra, the company issued in 1920 its Series D 8 per cent. bonds. These bonds granted the holders the option to exchange them for Series C 6 per cent. bonds at a premium of $50, and the company reserved the option to pay off the bonds in cash at par value plus a premium of $40. The taxpayer, having made arrangements for refinancing the 1920 bond issue, notified the bondholders on May 1, 1922, of its intention to retire that issue. In pursuance of this notice 43 per cent. of the Series D 8 per cent. bond issue was paid in cash and the balance of the issue was exchanged for Series C 6 per cent. bonds of the same par value plus $50 cash for each $1,000 Series D bond. The company brought an action to recover income tax paid by it for the year 1922 upon $285,737.79, income which it claimed was subject to deductions, first, for the premium of $105,000 paid to the bondholders upon the retirement of the 1920 bond issue, and, second, an amount of $180,737.79 representing unamortized discount and expense incurred in floating that bond issue. The court held that all unamortized discount and premiums paid which related to the 1920 8 per cent. bonds retired by an exchange of Series C 6 per cent. bonds, as well as that relating to the portion of the bond issue paid in cash, were recoverable by way of deductions for realized losses in the year of the retirement of the old bonds. The court said: "The applicable rule of the Treasury Department (Regulations 62, Art. 545) is set out in the footnote. The rule of the Treasury Department and the ordinary system of accounting as well, requires that each bond issue be treated as separate and distinct and that consequently when the bond issue is paid off the unamortized amount of discount which had been spread over the life of the bond is deemed paid at the time of the pay-

ment of the bond if it is redeemed at par, as in the case at bar. The amount paid to redeem the bond, of course, would be determined by the agreement between the taxpayer and the bondholder made at the time of redemption, or, as in the case at bar, by the agreement made in 1920 at the time the Series D 8 per cent. 1935 bond was issued. In either event the transaction is concluded by the redemption of the 1920 bond. At the time of redemption the bondholder is paid the par value of the bond so that he is in effect paid for the use of the money he lent the amount of the discount (both amortized and unamortized), which the taxpayer suffered at the time of the issue in 1920; he is also paid a premium for the privilege of anticipating the maturity of the bond in 1922. Both the discount in 1920 and the premium paid in 1922 represent a part of the cost of the money procured in 1920 by the sale of the Series D 8 per cent. bonds. The payment of the unamortized discount and expense of the Series D 8 per cent. bonds in 1922 is thus either a payment of interest which the statute expressly directs should be deducted from current income or is a loss of capital which the statute also allows as a deductible loss. Section 234 (a) (1), (2), Revenue Act 1921."

The question here was squarely decided against the Commissioner in San Joaquin Light & Power Corp. v. McLaughlin, supra. We are in accord with the reasoning of the court and the principle there announced in so far as it governs the facts in this case.

The decision of the Board of Tax Appeals is affirmed.