**TERRE HAUTE ELECTRIC CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 6338.**

Circuit Court of Appeals, Seventh Circuit.
April 1, 1938.

384

A. E. James, of Washington, D. C., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition for review of decisions of the Board of Tax Appeals wherein deficiencies were assessed in petitioner's income taxes in the amounts of $23,433.90, $18,899.06 and $23,448.03 for the years 1927, 1930 and 1931, respectively.

On March 25, 1907, the petitioner leased to the Terre Haute, Indianapolis & Eastern Traction Company for a period of 999 years, all of its property, which consisted of city and interurban traction lines, electric light and power and steam heating plants and system, lands, franchises and other property. The lease provided, among other things, that in case any of the leased property becomes worn, damaged or no longer suitable or necessary for its proper purposes, the lessee may sell, alter, change or replace such property, and also provides, with certain exceptions not here material, that the proceeds of any such sale or sales shall be applied to the substitution of property of value at least equal to that sold, or shall be expended to increase the value of the other property included in the lease. The lessee is also required to do everything necessary to maintain the street and interurban railway as first-class, efficient systems and to operate the same.

During the years in question, the lessee was the owner of all the outstanding common stock of petitioner, except eleven qualifying shares held by its directors. By the terms of the lease, dividends payable on both petitioner's preferred and common stock were to be made by the lessee, and in conformity with such provision, petitioner furnished the lessee a certified list of all of its stockholders, and the amount of the dividend to be paid to each, and, in each of the years in question, such payments were made by the lessee direct to the stockholders of petitioner. Both parties treated these payments as receipts of rental and payment of dividends.

The properties were operated by the original lessee until April 21, 1930, when they were placed in the hands of a receiver for the lessee, and were operated by such receiver on behalf of the lessee and its creditors until June 28, 1931. On this date the receiver conveyed such property to the Public Service Company of Indiana, which took possession and entered upon the operation of such properties subject to the terms and conditions of the lease.

The properties involved, so far as here material, consisted of three interurban railway lines known as the Terre Haute-Paris line, the Terre Haute-Clinton line and the Terre Haute-Sullivan line.

As of March 1, 1913, the undepreciated cost to the petitioner of the first was $475,665.44, of the second, $493,282.80 and of the third, $674,738.37. As of the same date, the reproduction cost of the first was $507,515.30, the second, $532,426.79 and the third $765,276.04. On January 1, 1927, it became certain that the three interurban lines in question, would, within a short period, become wholly obsolete and useless for railway operation.

On May 24, 1931, upon application of the Public Service Company and petitioner, authority was granted by the Public Service Commission of Indiana to discontinue the Clinton and Sullivan lines, and from and after that date, these lines, for the purpose of railway operation, were wholly obsolete. Operation of the Paris line was discontinued in the following year under similar circumstances, and likewise became obsolete.

Following the abandonment of railway operation, the power distribution lines on the right of ways were maintained and operated.

Petitioner's net income, as determined by the Commissioner, was for the year 1927, $173,548.44; 1930, $157,492.19 and for the year 1931, $195,400.21.

The essential questions presented are:

"1. Whether the taxpayer may exclude from taxable income dividends paid direct from the lessees of the taxpayer's property to its stockholders.

"2. Whether the taxpayer was entitled to a deduction for ordinary exhaustion, wear, and tear of property used in its trade or business during each of the years 1927, 1930, and 1931.

"3. Whether the taxpayer was entitled to a deduction for obsolescence of property used in its trade or business in each of the years 1927, 1930, and 1931.

"4. Whether the Board of Tax Appeals erred in refusing to find as a fact that the taxpayer sustained a loss in 1931 by reason of the abandonment of two certain interurban street railroad lines in the terms as set forth in a request for such finding.

"5. Whether the Board of Tax Appeals erred in refusing to grant a rehearing and in refusing to receive further evidence in respect of the issues of obsolescence and loss."

Petitioner virtually concedes that the first question must be answered in the negative. In view of the decision in U. S. v. Northwestern Telegraph Co., 2 Cir., 83 F. 2d 468, certiorari denied by the Supreme Court October 12, 1936, 299 U.S. 565, 57 S.Ct. 27, 81 L.Ed. 416, dealing with a like situation, in which reasoning and conclusion we agree, there is no occasion for us to enter into a discussion of the question thus presented.

This court had occasion in Commissioner v. Terre Haute Electric Co., Inc., 7 Cir., 67 F.2d 697, 698, certiorari denied Terre Haute Electric Co. v. Helvering, 292 U.S. 624, 54 S.Ct. 629, 78 L.Ed. 1479, to determine the question secondly presented. The same parties were then before the court, as well as the same lease, and the identical issue presented, except the years involved were 1922 and 1923. This court there held that the petitioner was not entitled to deductions for depreciation of the property leased by it to another company under the long-term lease of March 25, 1907. That decision was res judicata. See Tait v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Portage Silica Co. v. Commissioner, 6 Cir., 89 F.2d 958.

While the third question is somewhat similar to the second, yet the claimed deduction for obsolescence may, in some cases, be different from one for depreciation. Paragraph 7, § 234(a), of the Revenue Act of 1926, 44 Stat. 41, is the applicable provision. It is as follows: "A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

The Board was of the opinion that the decision of this court in Commissioner v. Terre Haute Electric Co., supra, was not res judicata on the question of an allowance for obsolescence, and, in this legal conclusion, we agree. It is the contention of the petitioner that, inasmuch as it became certain on January 1, 1927, that the three interurban lines included in the leased properties would, within a short period, become wholly obsolete and useless for railway operation, the petitioner was entitled to a deduction for such obsolescence. We agree with the Board's conclusion to the contrary. While there are cases which make a distinction between a deduction for depreciation and one for obsolescence, we are of the opinion they are not applicable to a situation arising out of a lease such as here involved. Under the terms of the lease, there could be no difference, so far as the petitioner was concerned, between a loss from depreciation and one from obsolescence. As to the former, this court in Commissioner v. Terre Haute Electric Co., supra, held that the petitioner sustained no loss through depreciation for the reason that the lessee had obligated itself to repair, maintain and replace the property and to turn over property of equal value at the termination of the lease. The question as to whether petitioner, under such a lease, suffered a loss from obsolescence, is so similar to the question as to whether it suffered a loss from depreciation of the leased property, that a negative answer to the latter precludes an affirmative answer to the former. In either case, the loss does not fall upon petitioner. By the terms of the lease it is afforded protection from both losses.

Petitioner discusses its obligation to replace these properties in the year 2906, as being fanciful beyond all reason and points out that there will not be any system of ground transportation running on rails at a time so far removed. It would be useless for us to speculate on what character of transportation the public will employ so far in advance, but it is sufficient to say we are not responsible for the obligations assumed by petitioner, or the burdens shifted by it to its lessee, covering a period of such length and duration that it may properly be termed an absurdity. If it now finds itself in a predicament which seems harsh, it alone is responsible.

The answer to the fourth question is more difficult of solution. Petitioner claims for that year a deductible loss in excess of $200,000 sustained upon the abandonment of the involved interurban lines. The Board refused to find as a fact that there was an abandonment of the property in 1931. A study of the record convinces us that such a finding should have been made, in so far as

the Clinton and Sullivan lines are concerned. On May 24th of that year, by authority of the Public Service Commission, the operation of such lines was discontinued and, from that date on, they were wholly obsolete for the purpose of railway operation. As to the Paris line, it continued to operate until the following year and, of course, it cannot be said that its abandonment took place prior to the date on which it ceased to operate.

Respondent advances the theory, untenable, we think, that the same principle which prevents petitioner from claiming a deduction for obsolescence or depreciation, is applicable. It is argued that the lease is sufficient, by its terms, to protect petitioner from a loss by abandonment. We think this is true had there been no change in the situation of the parties. The fallacy of the argument, however, lies in the fact that the abandonment took place under a court order approved by the Public Service Commission of Indiana and agreed to by the lessor. In Commissioner v. Terre Haute Electric Co., supra, this court said: "Upon the authority of Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720, we hold that there can be no deduction for depreciation in this case for the reason that, because of the lease, the taxpayer has failed to show a present loss to it."

Thus the theory upon which a lessor, under a lease such as here involved, has been denied the right to claim deduction for depreciation, is, that by the terms of the lease the lessee has assumed the obligation of maintaining and operating the property in such a manner that it will be returned to the lessor at the expiration of the lease in as good condition as at the beginning, and, therefore, the lessor has sustained no loss. In this case, as we have pointed out, the petitioner, as lessor, has sustained no loss either by depreciation or obsolescence as that burden was assumed by the lessee and protects petitioner during the life of the lease.

We are unable to see any reason, however, why the contracting parties could not cancel a lease of this character, or any other character for that matter, and relieve themselves of the obligations incurred thereby, provided, of course, it was not to the injury of third parties. Here, apparently, the parties to the lease in 1931, agreed that two of the lines in question might be abandoned, and, by proper state authority, were directed to be abandoned. Under such circumstances, how can it be said that the lessor is protected from the loss thus sustained? Certainly, thereafter, the lessee would be under no obligation to restore the abandoned property. It seems clear to us that petitioner sustained a deductible loss for the year 1931, on account of the two interurban railways abandoned that year. The loss sustained by reason of the abandonment of the other line in 1932 is not here material.

Having thus determined, the next step is the manner in which this loss is to be ascertained. Paragraph (g), § 23, Revenue Act of 1928, 45 Stat. 799, 26 U.S.C.A. § 23 and note, makes provision for the manner of determining losses by corporations and provides that the amount of deductions for losses sustained shall be the same as provided in section 113, 26 U.S.C.A. § 113 note, for determining the gain or loss from the sale or other disposition of property. The latter section, applicable to property acquired before March 1, 1913, fixes the basis for determining the gain or loss from the sale or other disposition of such property, as, first, the cost of such property, and, second, the fair market value of such property as of March 1, 1913, whichever is greater. As heretofore stated, the Board found the undepreciated cost as of March 1, 1913, and also the reproduction cost as of that date. Neither of these findings is in conformity with what seems to be the plain mandate of the statute with reference to the basis to be used in the determination of a loss. In addition, as we understand, the undepreciated cost and the reproduction cost, as found, included transmission lines and property of the petitioner other than the abandoned lines themselves. It seems to us, that in determining the amount of loss which petitioner is entitled to deduct for the year 1931, there must be an ascertainment of the cost of the abandoned property and its fair, cash, market value as of March 1, 1913, whichever is greater, to be used as a basis for determining the loss.

Petitioner relies upon the case of Commissioner v. Providence, Warren & Bristol Railroad Co., 2 Cir., 74 F.2d 714, as announcing a different basis for the determination of such a loss. In fact, it is claimed, this case was followed in presenting its evidence as to the basis to be adopted. It is true, that in that case a loss on the sale of the leased property was allowed in the amount by which its cost exceeded the salvage price, without taking into account

depreciation sustained prior to March 1, 1913. It does not appear, however, that any question was raised covering the proper basis to be used. Under such circumstances, the court cannot be said to have decided a point which was not raised or considered. U. S. v. Mitchell, 271 U.S. 9, 46 S.Ct. 418, 70 L.Ed. 799. In any event, we are unable to reconcile what the court there said with the statutory provision with reference to the basis to be employed in arriving at the loss sustained.

The cause is remanded to the Board of Tax Appeals for the purpose of making an ascertainment of the loss sustained for the year 1931, with the further direction that petitioner be allowed to offer any competent proof bearing thereon. As to the other issues involved, the decision of the Board of Tax Appeals is affirmed.