**VIRGINIA ELECTRIC & POWER CO. v. EARLY, Collector of Internal Revenue.**

No. 126.

District Court, E. D. Virginia, Richmond Division.

Sept. 23, 1943.

T. Justin Moore, George D. Gibson, and Richard W. Emory, all of Richmond, Va., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Homer R. Miller, Sp. Assts. to the Atty. Gen., and Sterling Hutcheson, U. S. Atty., and George R. Humrickhouse, Asst. U. S. Atty., both of Richmond, Va., for defendant.

POLLARD, District Judge.

This is a civil action to recover federal income taxes for the calendar year 1934 assessed against the plaintiff, Virginia Electric and Power Company, and paid under protest to the defendant, N. B. Early, Jr., who then was and now is Collector of Internal Revenue for the District of Virginia. This court has jurisdiction of the action by virtue of Section 41(5) of Title 28 U.S.C.A.

The issues present three legal questions of federal income tax law. These questions are as follows:

(1) The plaintiff in the year 1934 paid to its bondholders as premiums in connection with the exchange of its old bonds for new bonds the sum of $782,780. The Commissioner amortized the premiums paid over the life of the new bonds. The plaintiff contends that the entire sum should have been allowed as a deduction from gross income for the taxable year 1934.

(2) The Commissioner spread the sum of $24,880, being unamortized expenses and discount pertaining to the Norfolk and Portsmouth Traction bonds, over the life of the new bonds. The plaintiff claims that it is entitled to deduct said sum as a loss from taxable income for the year 1934.

(3) The Commissioner disallowed a claimed loss of $84,800 asserted by the plaintiff by reason of the abandonment in the year 1934 of certain park property in Richmond, Virginia. The plaintiff claims that it is entitled to the deduction of said sum from taxable income for said year.

The statutes and Treasury Regulations involved are as follows: Revenue Act of 1934, c. 277, 48 Stat. 680, § 23(a) (f), § 113, 26 U.S.C.A. Int.Rev.Acts, pages 671, 672, 696; Treasury Regulation 86, Art. 22(a)-18, (2) (a), (3) (a), (4) (a); Art. 23 (a)-1; Art. 23(e)-3; Art. 23(f)-1; Art.

23(o)-2; Art. 113(a) (14)-1; Art. 113(b)-1; T.D. 4603, XIV-2 Cum.Bull. 58 (1935).

The questions presented will be considered in the order enumerated above.

(1) The Loss Claimed on Premiums Paid Bondholders.

As to this claimed loss, I find the facts to be as stipulated by the parties. Stipulation of Facts (1), (2), (3), (4), (5), (6), filed March 15, 1943.

The total sum paid by the plaintiff in the year 1934 to its bondholders as premiums in connection with its exchange of its old bonds for new bonds was $782,780. The plaintiff contends the entire sum should be allowed as a deduction as a loss or expense from gross income for the taxable year 1934. It is the contention of the Government that the Commissioner correctly amortized or prorated such payments made by the plaintiff over the life of the new issue of bonds.

The solution of the question is to be determined by ascertaining the nature of the transaction between the plaintiff and its bondholders. If the transaction was a purchase by the plaintiff of its bonds, then the plaintiff's claim must be sustained by reason of Treasury Regulation 86, Art. 22(a)-18. On the other hand, if the transaction was a substitution of the new bonds for the old, then the expenses must be amortized, as the Government claims, over the life of the new bonds, as was held in the case of Great Western Power Company v. Commissioner, 297 U.S. 543, 56 S.Ct. 576, 80 L.Ed. 853.

A careful comparison of the transaction in the instant case with that in the Great Western Power Company case will show that the two transactions were essentially identical. The fact that the option in the instant case was not contained in the old bonds but was subsequently and separately given is immaterial. Whether the transaction was a purchase or a substitution is to be determined under the factual situation which existed when the old bonds were retired and not when they were issued. At the time the bonds were retired, the factual situations in the two cases were the same and under the authority of the Great Western Power Company case I feel constrained to hold that the transaction in the instant case was one of substitution and not of purchase.

An additional reason for determining that in the instant case the transaction was one of substitution rather than purchase is the legal inter-relationship existing between the old and the new bonds. The existence of the new bonds arose from and depended entirely upon a surrender of the old bonds; the old and the new bonds were not in existence at the same time; the parties were the same; and the original indebtedness as represented by the old bonds continued without interruption (by virtue of the exchange) between the same parties, being changed merely as to the form and date of maturity. Helvering v. California-Oregon Power Company, 64 App.D.C. 125, 75 F.2d 644; Helvering v. Union Public Service Company, 8 Cir., 75 F.2d 723.

The plaintiff relies upon Commissioner v. Coastwise Transportation Corporation, 1 Cir., 71 F.2d 104, to support its contentions. A study of that case discloses no discussion whatsoever pertaining to whether the transaction there involved constituted a purchase or a substitution. The question there was whether or not the taxpayer sustained a gain from the transaction. And in that case the old indebtedness as evidenced by serial notes was retired through a purchase in the open market, i. e. by negotiations through a syndicate.

My conclusion is that the Commissioner was correct in amortizing premiums paid on the exchange of bonds over the life of the new bonds.

(2) The Deduction Claimed for Unamortized Bond Discount on the Old Bonds.

As to this claimed loss, I find the facts to be as stipulated by the parties. Stipulation of Facts (7), filed March 15, 1943.

The plaintiff claims as a deductible loss from taxable income for the year 1934, the sum of $24,880.26, unamortized discount and expenses pertaining to the Norfolk and Portsmouth Traction bonds. This contention is disposed of by the holding in the Great Western Power Company case, supra, 297 U.S. at pages 546, 547, 56 S.Ct. at page 577, 80 L.Ed. 853. I am of opinion, for the same reasons heretofore expressed, that the transaction whereby the Norfolk and Portsmouth Traction bonds were retired in 1934, was one of substitution whereby the old debt was extended.

As the cases relied upon by plaintiff involve a retirement of the bonds from the proceeds of the sale of a new issue and are therefore not in point, I see no necessity for a further discussion of said cases.

■ My conclusion is that the Commissioner correctly spread the unamortized discount on the old bonds over the life of the new bonds.

### (3) Loss Claimed on Abandoned Park Property.

As to this claimed loss, I find the facts to be as stipulated in stipulation No. (8), with the following finding of fact made upon the evidence heard before the court:

The plaintiff in the year 1934 abandoned the park property because abandonment of the street car line of which it was an adjunct rendered it useless in the plaintiff's business and the plaintiff gratuitously conveyed said property to the City of Richmond because a title restriction rendered it valueless for the purpose of sale. The fair market value of the park property at the date of its acquisition in the year 1909 was $84,800.

The plaintiff contends that Section 23 (f) of the Revenue Act of 1934, authorizing the deduction from taxable income of "losses sustained during the taxable year and not compensated for by insurance or otherwise", allows it to deduct the loss sustained by the abandonment of this property.

The Government contends that the petitioner is not entitled to deduct its alleged loss for the following reasons: (a) the alleged loss is a deduction allowed under the Revenue Act of 1934 to individuals and not to corporations; (b) the plaintiff has failed to show that a loss was sustained in the year 1934; and (c) the plaintiff has failed to show the adjusted cost of the property. The contentions of the Government will be considered in the order in which they are stated above.

It is a complete answer to the first contention of the Government merely to note that no question of a charitable contribution is presented or ever claimed by the plaintiff. The cases cited by the Government relate either to deductions for contributions to community funds or to the deductibility of ordinary and necessary business expenses, and hence such authorities are clearly inapplicable.

■ It is undoubtedly true, as the Government contends, that the plaintiff is not entitled to a deduction upon a mere showing of an abandonment. The plaintiff must go further and show the extinguishment of value, Commissioner v. McCarthy, 7 Cir., 129 F.2d 84, and that the loss claimed was fixed by identifiable events occurring in the year 1934 from which it may with reasonable certainty be ascertained that they have been sustained, Brown v. Commissioner, 6 Cir., 94 F.2d 101, before it can have the benefit of the deduction. In my opinion the stipulation of facts and the evidence clearly establish that the plaintiff has carried the burdens placed upon it in such respects.

■ This brings me to a consideration of the contention of the Government that the plaintiff has failed to prove the adjusted cost of the park property. Deductions from gross income of losses are governed by Sec. 23(f) of the Revenue Act of 1934 and Treasury Regulation 86, Art. 23(e)-3. The statute and regulation referred to plainly allow abandonment losses. Terre Haute Electric Company v. Commissioner, 7 Cir., 96 F.2d 383; Denman v. Brumback, 6 Cir., 58 F.2d 128; Commissioner v. Hoffman, 2 Cir., 117 F.2d 987. The Government does not deny that under the law deductions are allowed where there has been an abandonment of a valuable asset used in the taxpayer's business. It is strenuously contended, however, that the plaintiff has failed to establish with reasonable certainty the amount of its loss. In other words, the position of the Government is that basis for determining a gain or loss is the cost of the property and inasmuch as the plaintiff purchased the park property along with other assets for several millions of dollars without there being any allocation with respect to the cost of the park property, there must be some evidence under which the court can on some reasonable basis find the part of the purchase price properly allocable to cost of the park property. It is true that the taxpayer must establish with some reasonable certainty the amount of his loss and ascertainment of the loss must not be left to speculation or conjecture. Texas Chemical Company v. Commissioner, 11 B.T.A. 390.

■ In the brief of attorneys for the plaintiff many cases are cited in which the principles of law applicable to the ques-

tion here under discussion are fully and plainly stated. To review these authorities would serve no useful purpose. It is sufficient to say that as I read these cases the plaintiff's evidence measures up to the quality of proof necessary to sustain a holding on this point in its favor.

The cases of Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991, and Hirschberg v. United States, D.C., 18 F. Supp. 881, cited by the Government, are not in point. In those cases the taxpayer failed to introduce any evidence as to value.

My conclusion is that plaintiff is entitled to claimed loss of $84,800 on account of the abandonment of park property in 1934.

An order carrying into effect the views here expressed may be presented after reasonable notice.