Ellis CAMPBELL, Jr., Director of Internal Revenue for the Second Collection District of Texas, Appellant,

v.

GREAT NATIONAL LIFE INSURANCE COMPANY, Appellee.

No. 15005.

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1955.

Grant W. Wiprud, Tax Div., Dept. of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., John C. Ford, Asst. U. S. Atty., Dallas, Tex., Hilbert P. Zarky, Sp. Asst. to the Atty. Gen., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellant.

Webster Atwell, Dallas, Tex., Walton Grayson, III, Dallas, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This case presents the question whether royalties are "rents" within the definition of the gross income of life insurance companies as set forth in Section 201(c) (1) of the Internal Revenue Code.[1]

The appellee here, the Great National Life Insurance Company, was during the period hereinafter mentioned, a life insurance company as defined in Section 201(b) of the Internal Revenue Code. In the conduct of its investment business and on some undisclosed date prior to the year 1949, appellee acquired vendor's lien notes secured by land in Scurry County, Texas, and simultaneously mineral interests in said county. In 1949 the mineral interests so acquired were leased by appellee under three written oil and gas leases. As consideration therefor, appellee received in the year 1949 cash bonuses totalling $166,452.05 and there was reserved to it by the terms of the leases a certain percentage of all oil, gas and other minerals discovered and produced as royalty. In accordance with these royalty provisions and by reason of the discovery of oil in paying quantities appellee received in the years 1949 and 1950, in addition to bonus moneys, royalties totalling $81,525.01, and $257,122.21 respectively. In its income tax returns for the years 1949 and 1950, appellee did not report as income any of the amounts which it had received as lease bonuses and royalties. Upon audit, the Commissioner included these amounts as income to the appellee and assessed deficiencies for those years. Appellee paid the deficiencies and after its claims for refund were either rejected or disallowed, it instituted this action in the court below, to recover the amounts paid under the deficiency assessments.

The District Judge before whom the trial was had without the intervention of a jury made and entered appropriate findings of fact and conclusions of law. He found that the bonuses and royalties received by appellee during the tax years here involved did not constitute taxable income to it since such income was not income from interest, dividends or rents, as provided in Section 201(c) of the Internal Revenue Code; and that because of the erroneous inclusion in appellee's income of the amounts so received appellee had overpaid its income taxes for the years 1949 and 1950 in the sum of $18,733.50. Judgment was accordingly entered for the appellee, (119 F.Supp. 57,) and this appeal followed.

Legislative history discloses that prior to 1921 life insurance companies were

---

1. Section 201(c) (1) of the Internal Revenue Code, 26 U.S.C.1946 ed., Sec. 201, provides that, with respect to life insurance companies, "The term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents."

taxable as ordinary corporations. This original plan of taxation was generally recognized to be unsatisfactory in that it was productive of almost constant administrative controversy and litigation. As a result the life insurance companies, through the Association of Life Insurance Presidents proposed to Congress a new plan for the taxation of life insurance companies in connection with the pending Revenue Bill of 1918 then under consideration. The House in disagreement with the Senate declined to adopt the proposed plan in the Revenue Bill of 1918. However, and following renewed efforts on the part of the association the proposed plan was later adopted and included in the Revenue Act of 1921, 42 Stat. 261. The 1921 Act placed life insurance companies in a special class for the purpose of Federal taxation. It wholly exempted them from the general scheme of corporate taxation and set up special systems applicable to them alone. More specifically, it changed the basis of tax theretofore existing by declaring that "in the case of a life insurance company the term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents." 42 Stat. 261, § 244(a). This statutory definition of "gross income" of life insurance companies has weathered the years and has been carried forward in eight different Revenue Acts without change or amendment and is now numbered Section 201(c) (1) of the Internal Revenue Code.

We come now to the principal issue in the case, and that is whether or not the bonus money and royalty payments received by appellee were gross income within that statutory definition. The parties agree that the bonuses paid to appellee for the execution and delivery of the oil and gas leases constitute royalties for federal tax purposes. They further agree that royalties are neither interest nor dividends. Consequently the crucial question on this appeal is whether these royalties are includable as "rents" within the meaning of Section 201(c) (1).

Appellant, citing Farmers Life Insurance Co. v. Commissioner, 27 B.T.A. 423, reversed and remanded on another issue pursuant to stipulation, 10 Cir., 77 F.2d 995, insists that this question must be answered in the affirmative. In support of this contention it is argued that Congress in defining the gross income of life insurance companies as including "rents" clearly intended to encompass all forms of investment income described by that term in its broad generic sense and thus to include royalties; and there is nothing in the statutory context of that word, as used in Section 201(c) (1) to compel a different interpretation. But, we do not perceive the force of this argument. In our opinion, such interpretation is without support in either the terms or the theory of the statute.

The interpretation urged by appellant is that the term "rents" as used in Section 201(c) (1) includes royalties. Had this been meant, it could have been so simply stated that we do not believe Congress would have used a locution so much more complicated. In this connection it is interesting to note that the Revenue Act of 1921 also contained in Section 213, 42 Stat. 237, the general definition of gross income which now constitutes Section 22(a) of the Internal Revenue Code, 26 U.S.C. § 22(a). As in Section 22(a) gross income was defined in Section 213 as including, *inter alia*, income from "dealings in property, whether real or personal," or the "transaction of any kind of business carried on for gain or profit," or "income derived from any source whatever." Obviously, this section covers every kind of income as its very words indicate and the fact that royalties is not mentioned, does not protect them because royalties come from "dealings in property" and from "other sources." Because there was no doubt in 1921 that royalties constituted gross income within the meaning of that statute it will not do to argue, as does the appellant, that by virtue

of the fact that the general definition of income also includes income from rent it is only reasonable to conclude that the word rent was used in Section 213 in its broad generic sense as including royalties, and that Congress used the word in the same sense in Section 244(a) of the same Act.

Appellant contends that the word rents in its common and usual meaning includes royalties. But, this is not the common meaning ascribed to the word in any of the numerous dictionaries which we have examined. In Webster's International Dictionary (2d. Ed.) 1943, the word "rent" is defined as:

> "The return made by the tenant or occupant of land or corporeal hereditaments to the owner for the use thereof; a certain periodical profit, whether in money, provisions, chattels or services, issuing out of lands and tenements in payment for the use; commonly, a certain pecuniary sum agreed upon between a tenant and his landlord and paid at fixed intervals by the tenant to the landlord, for the use of land or its appendages; as rent for a farm, a house, a park, etc."

The same work defines a "royalty" as "A share of the product or profit (as of a mine, forest, etc.) reserved by the owner for permitting another to use the property." There is, there can be, no doubt that Congress understood the difference in the meaning of these words in respect to patents, copyrights, etc.; for in Section 217(a) (4) and Section 217(c) (4) of the Revenue Act of 1921, 42 Stat. 244, which relates to the income of nonresident alien individuals, it specifically dealt with both rents and royalties. If there is perhaps need to say more, we point to the pertinent provisions of the Revenue Acts of 1934, 1936, and 1937, as proof of the fact that Congress differentiated and drew a clear distinction between rents and royalties in the Personal Holding Company Act and in the Foreign Personal Holding Company Act. And what is important in respect to this legislation is the fact that it has been judicially determined, and we think correctly, that the distinction which Congress intended to make between the two words was "the commonly accepted one that rent is a compensation for the right to use property which is fixed and certain in amount and payable periodically over a fixed period regardless of the extent of the use of the property, while royalty is a compensation for the use of property which is based as to amount entirely upon the use actually made of the property." [Emphasis supplied.] Logan Coal & Timber Ass'n v. Helvering, 3 Cir., 122 F.2d 848, 850.

By defining statutory gross income to include only interest, dividends, and rents, the intention was disclosed to omit all other factors from consideration. The statute is clear and unambiguous and we are constrained to apply it according to its tenor and terms. Nowhere in the present controversy do we find a concept of rent so broad as to include royalties. Nowhere in the law is there a principle which remotely indicates that if one allows another to remove part of his fee simple estate that the payments for that removal, and destruction are "rents". Rent has since feudal times implied two separate persons and estates, those of landlord and tenant, and it would be a misnomer to apply it to the royalties received by the landlord from the sale of his own oil.

There is one additional consideration which should not be overlooked and that is that Congress did not provide for depletion, with respect to royalties received by life insurance companies. It is certainly logical and reasonable to assume that if Congress had intended to tax life insurance companies upon royalties paid under oil and gas leases that it would have granted to them a depletion allowance since other royalty owners are entitled to such allowance for the loss of their capital. It, therefore, seems an unfair criticism of Congress to say that in an effort to adopt a uniform nation-wide scheme of taxation that it would purposely allow one royalty owner no chance to recoup his economic interest. The

suggestion that as Congress may or may not grant deductions from gross income at pleasure, it can deny to one and give to another, is specious but unsound.

Accordingly, the judgment appealed from is affirmed.

Affirmed.

RIVES, Circuit Judge (dissenting).

With much deference to the clear, concise, and forceful opinion of the majority, and to the able opinion of the district court reported in 119 F.Supp. 57, et seq., I am constrained to dissent.

As an academic exercise in semantics, it seems to me that either the affirmative or the negative can be proved that is, that the word "rents" includes royalties, or that it does not include royalties. It has often been used in both senses as is demonstrated by a reference to the many cases collected under the subheading "royalty" to the word "rent" in 36 Words and Phrases, pp. 912–914, and the pocket supplement thereto. See also Burton-Sutton Oil Co. v. Commissioner, 328 U.S. 25, 29, 66 S.Ct. 861, 90 L.Ed. 1062; Kirby Petroleum Company v. Commissioner, 326 U.S. 599, 607, 66 S. Ct. 409, 90 L.Ed. 343; Burnet v. Harmel, 287 U.S. 103, 106, 53 S.Ct. 74, 77 L.Ed. 199; Von Baumbach v. Sargent Land Co., 242 U.S. 503, 521–522, 37 S.Ct. 201, 61 L.Ed. 460. Which is the more common and usual meaning of the word is probably a debatable question.

To arrive at any conclusion, we must get down to cases. The question is whether the word "rents" as used in defining the gross income of life insurance companies for purposes of taxation [1] includes royalties. To my mind, that question leads immediately to the purpose of the Congress in singling out life insurance companies for special and preferred tax treatment and confining the tax on such companies to income received or accrued from "interest, dividends and

rents". The Supreme Court has said that, "The new plan, as it related to life insurance companies, had as a major objective the elimination of premium receipts from the field of taxable income." Helvering v. Oregon Mutual Life Insurance Co., 311 U.S. 267, 269, 61 S.Ct. 207, 208, 85 L.Ed. 180. Underlying the special systems applicable to insurance companies alone was the dual nature of the business of insurance.

" * * * Every insurance business consists of two major activities: underwriting and investments. Speaking of the 'investment business' of a life insurance company, the Supreme Court has said: [28]

" 'That phrase may be taken to include activities relating to interest, dividends, and rents constituting the income taxed as distinguished from its "underwriting business" which embraces its other activities.'

"As a general rule no one would buy insurance from a company that does not have a substantial net worth in assets over and above its current premium income. Obviously these assets must be invested and must produce an investment income. Except for small mutual associations on a co-operative assessment basis, the business of insurance is therefore necessarily a combination of the business of underwriting and the business of investment. * * *

"28 Rockford Life Insurance Co. v. Commissioner, 1934, 292 U.S. 382, 54 S.Ct. 761, 78 L.Ed. 1315."

Mertens Law of Federal Income Taxation, Vol. 8, Sec. 44.04, pp. 10 and 11.

The legislative history cited in the briefs of counsel indicates to me that the plan was to tax life insurance companies on the basis of investment income as distinguished from underwriting income.[2]

---

1. Section 201(c) (1) of the former Internal Revenue Code, footnote 1 to the majority opinion, now Section 803(a) of the 1954 Internal Revenue Code, 26 U.S.C.

2. The Senate Report on the Revenue Bill of 1918 [S.Rep. No. 617, 65th Cong. 3d Sess., p. 9; 1939–1 Cum.Bull. (Part 2) 117, 123]; the House Conference Re-

To carry out that purpose, no narrow or limited meaning can be given to the words "interest, dividends and rents". In speaking of those words as applicable to a different set of facts, the Supreme Court has said:

"The terms 'interest,' 'dividends,' and 'rents,' employed in the statute simply and without qualification or elaboration, were plainly used by Congress in their generic meanings, as broadly descriptive of certain kinds of 'income.'" Helvering v. Midland Ins. Co., 300 U.S. 216, 223, 57 S.Ct. 423, 425, 81 L.Ed. 612.

It is true that some kinds of investment income of life insurance companies, such as capital gains and income from the sales of property, are not taxed. The occasional receipt of income of that character by companies which undertake to confine their investment income to "interest, dividends and rents" would usually be closely related to the business of underwriting. See 8 Mertens Law of Federal Income Taxation, Sec. 44.04. The separate schemes of taxation for insurance companies were adopted in the light of the fact that investments of such companies were governed and limited by state laws. Congress evidently anticipated that life insurance companies, as so regulated, would derive most of their investment income from "interest, dividends and rents". How nearly that anticipation has proved true in experience may be roughly gleaned from the facts as stated in the 1954 Brittanica Book of the Year, pages 361, 362: "As of July 31, 1953, assets of United States and Canadian legal reserve life insurance companies reached $81,000,000,000 made up of 44% corporate securities, 29% mortgages, 17% government bonds and 10% other assets." [3]

If the self-restraint of the life insurance companies and the state regulatory laws should be so far relaxed that such companies engage directly in distinct businesses, then, of course, much of the income from such businesses would *not* come within the terms, "interest, dividends and rents". Serious problems would then arise as to the taxation of such companies on their income from the separate businesses. So far such problems have been faced by the courts in only a few cases, and in those the decisions have not been entirely harmonious.[4] If the courts find that they cannot solve such problems so as to carry out the Congressional purpose of taxing life insurance companies on their investment income, Congressional action may be indicated to enlarge the sources of taxable income of such companies beyond "interest, dividends and rents". A problem of that kind would have arisen in the case of the present taxpayer, if, instead of leasing its oil lands, it had gone one step further toward engaging directly in a separate business by itself mining and producing the oil. It is questionable whether the courts could then solve the problem under the present statute with equitable results to the Government, the taxpayer, and to its competitors in the life insurance business and in the oil producing business.

The present case is not so extreme. Here, the life insurance company leased its oil lands to others and received in-

---

port [H.Conference Rep. No. 1037, 65th Cong., 3d Sess., p. 55; 1939–1 Cum.Bull. (Part 2) 130, 140]; House Report on the Revenue Bill of 1921 [H.Rep. No. 350, 67th Cong., 1st Sess., p. 14; 1939–1 Cum.Bull. (Part 2) 168, 178]; Senate Report [S.Rep. No. 275, 67th Cong., 1st. Sess., p. 20; 1939–1 Cum.Bull. (Part 2) 181, 195]. The distinction between the two is expressed in Sec. 204(b) (3) and (4) of the 1939 Internal Revenue Code, 26 U.S.C. § 204(b) (3, 4), relating to

"insurance companies (other than a life or mutual)".

3. The $81 billion assets were divided $76 billion among approximately 800 United States life insurance companies and over $5 billion among about 30 Canadian companies. The Americana Annual 1954, p. 413. The "10% other assets" included, of course, the insurance companies' home buildings and their rental properties.

4. See the authorities cited in footnotes 44 and 48, pages 16 and 17, of 8 Mertens Law of Federal Income Taxation.

come therefrom in the form of royalties. The courts, I think, can and should carry out the Congressional purpose by holding that the royalties are included within the term "rents".

True,[5] Congress had made no provision for depletion allowances which would apply to oil royalties received by life insurance companies. It seems to me that such failure works a lesser degree of discrimination than is worked by upholding the taxpayer's insistence that it is exempt entirely from the tax which ordinary business corporations have to pay on the receipt or accrual of income from oil royalties. Obviously, the separate scheme of income taxation provides many advantages for life insurance companies by confining their taxable income to interest, dividends and rents, and those advantages would far outweigh the disadvantage arising from the failure to provide for any depletion allowance on oil royalties.

It may be that Congress did not anticipate that life insurance companies would go even that far toward engaging in a separate business, for it appears that only one prior decided case has arisen involving the taxability of oil royalties as income of a life insurance company. Farmers Life Insurance Co. v. Commissioner, 27 B.T.A. 423. Indeed, if appellee were willing to forego its claim of complete tax exemption as to the oil royalties, it lies within its power to prevent any discrimination on any side by adopting the simple device of conveying its oil lands to a separate business corporation in exchange for that corporation's capital stock. If a life insurance company electing to lease its oil lands directly is entitled to any relief in the matter of depletion allowance, it seems to me that the remedy should be sought in Congress.

I respectfully dissent.

5. Certainly prior to the 1954 Internal Revenue Code. See Section 611 of that Code, 26 U.S.C.