## General American Life Insurance Company, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 53957.    Filed March 16, 1956.

*Frank P. Aschemeyer, Esq.*, for the petitioner.
*Melvin A. Bruck, Esq.*, for the respondent.

#### OPINION.

Rice, *Judge:* This proceeding involves the following deficiencies in income tax determined by the respondent under the provisions of the 1939 Code:

| Year | Income tax deficiency |
|---|---|
| 1949 | $1,951.48 |
| 1950 | 3,114.59 |
| 1951 | 5,203.77 |

The sole issue is whether royalties from oil and gas leases and penalties received from mortgage debtors, who prepaid their loans, constitute "rents" and "interest," respectively, within the meaning of section 201 (c) (1) of the 1939 Code.[1]

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Petitioner is a Missouri corporation engaged in the life insurance business as a mutual life insurance company issuing various types of life, health, accident, and sickness insurance policies and annuity contracts. Its principal office is in St. Louis. Petitioner filed its returns for the calendar years in issue with the former collector of internal revenue for the first district of Missouri.

During the years in issue, petitioner received the following royalties from the production of oil and gas under leases which it owned in various States:

| Year | Amount |
|---|---|
| 1949 | $44,803.31 |
| 1950 | 36,985.11 |
| 1951 | 38,570.47 |

---

[1] SEC. 201. LIFE INSURANCE COMPANIES.

(c) OTHER DEFINITIONS.—In the case of a life insurance company—

(1) GROSS INCOME.—The term "gross income" means the gross amount of income received during the taxable year from interest, dividends, and rents.

In most cases in which penalty payments were received, the notes evidencing the mortgagor's indebtedness to petitioner recited a specific charge for such prepayment. In other instances, the mortgage notes did not contain such prepayment penalty provisions and, in those cases, the penalty received by petitioner was the result of negotiations between it and the mortgagors.

Petitioner did not include the above-mentioned royalties or penalty payments in its gross income for tax purposes during the years in issue. The respondent determined that such sums should have been included.

In *Pan-American Life Insurance Co.*, 24 T. C. 901 (1955), we held that royalties on oil and gas leases received by a life insurance company did not constitute "rents" within the meaning of section 201 (c) (1), relying on *Campbell* v. *Great National Life Insurance Company*, 219 F. 2d 693 (C. A. 5, 1955). On the authority of those cases, we hold that the respondent erred in determining that the royalties received by the petitioner constituted taxable income to it.

The petitioner argues in opposition to the respondent's determination that the penalty payments received by it from mortgagors who prepaid their mortgage indebtedness constituted taxable interest income, that interest cannot be both compensation paid for the use, detention, or forbearance of money and a consideration paid for the privilege to return money before the indebtedness becomes due and payable. It argues that these concepts are fundamentally inconsistent and, in support of its argument, cites a number of State court decisions which have held that similar penalty payments did not constitute interest within the meaning of State usury statutes. Petitioner also points out that the respondent in Revenue Ruling 55-12, 1955-1 C. B. 259, held that a similar penalty payment did not meet the definition of interest under section 23 (b) of the Code in order to qualify as a deduction. That ruling states in part:

In order for a payment to be deductible as interest, it must be made for the use of borrowed money. A payment made for the privilege of prepaying an indebtedness is not one which can be said to be for the use of the borrowed money; it is in the nature of a penalty to gain release from a preexisting contractual liability to make payments in the future. Such a payment cannot be classified as a payment of interest within the meaning of section 23 (b) of the Code. This is true whether the payment is made pursuant to a prepayment clause in the original indebtedness agreement or through a negotiated release. * * *

In support of his determination that such penalty payments do constitute interest, the respondent argues that this Court is not bound by State court decisions defining interest. He further argues that

the penalties paid by mortgagors for prepayment of their indebtedness to petitioner in reality do constitute interest because such penalty payments are simply an additional charge for the use of petitioner's money for a short period of time, rather than for a longer period as originally agreed upon at the time the money was borrowed; and that the cost of short-term money is generally higher than for long-term.

We have examined the legislative history of section 201 (c) (1) but are unable to find any indication as to whether Congress intended to include such penalty payments within the meaning of the word "interest" as used in that section. However, we are persuaded that the respondent's argument here is right and that the penalties which mortgagors paid to petitioner for the privilege of using its money for a shorter period of time than that for which they originally borrowed the funds constituted, for all practical purposes, an additional interest charge for the use of such money for such shorter period. Clearly, penalty payments are a cost to the borrowers for using petitioner's money and we are, therefore, satisfied that interest as used in section 201 (c) (1) includes such cost.

Our examination of existing authority has not disclosed a case in which the particular issue raised here has been decided; but, we do not believe that Congress intended to restrict the meaning of the word "interest" in section 201 (c) (1) to some narrower interpretation than the meaning which that word has in other sections of the Code. In *Seaboard Loan & Savings Association, Inc.*, 45 B. T. A. 510 (1941), we said that a 2 per cent charge which the taxpayer made for investigating the financial responsibility of its borrowers constituted interest within the meaning of section 353 (a) of the 1936 Revenue Act, as amended. So also in *Bond Auto Loan Corp.* v. *Commissioner*, 153 F. 2d 50 (C. A. 8, 1946), affirming a Memorandum Opinion of this Court dated October 5, 1944, the Court of Appeals said that an "extra hazard charge" which the loan company made in addition to the 8 per cent interest charged, constituted additional interest income to it.

Looking beyond the nomenclature used to describe the various charges which lenders made in those cases and here, the common denominator present throughout is that the charges were, in fact, a part of the cost to the borrowers for the use of the lenders' money. And, being part of such cost, it seems to us that such charges are clearly interest as defined by the Supreme Court in *Deputy* v. *du Pont*, 308 U. S. 488 (1940) : "In the business world 'interest on indebtedness' means compensation for the use or forbearance of money." See also

*Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552 (1932). We, therefore, hold that the penalty payments which petitioner received from mortgagors constituted interest within the meaning of section 201 (c) (1).

In reaching such conclusion we have not commented on Revenue Ruling 55-12, *supra*, since it purports to interpret a different section of the Code which deals with deductions from gross income. It might be appropriate to say, however, that consistency would seem to require the word "interest" to mean the same thing throughout the entire Code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*