S. Rex Lewis and Joan T. Lewis, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 2798-74.    Filed December 24, 1975.

Jackson B. Howard, appearing specially for the petitioners.
*James L. Norris,* for the respondent.

---

## OPINION

The parties to this litigation are agreed that the $36,000 loan fee (points) is interest within the meaning of section 163(a), I. R. C. 1954.[4]

Under section 163(a),[5] a taxpayer reporting income and expenditures in accordance with the cash receipts and disbursements method of accounting is ordinarily entitled to deduct an interest payment in the year in which it is made. *Lewis C.*

---

[4] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

[5] SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

*Christensen,* 40 T.C. 563, 577-578 (1963). Unquestionably the fee was a *payment* of interest *made in 1970;* because once the $36,000 had been transferred on December 28, 1970, it was not refundable in any event. *John Ernst,* 32 T.C. 181 (1959). Respondent contends that nevertheless the fee ought not to have been deducted in 1970 but rather amortized over the term of the loan.

In support of his contention respondent cites *Anover Realty Corp.,* 33 T.C. 671 (1960). That decision indicates that costs incurred in procuring a loan must be amortized over its term. See 33 T.C. at 674-675. Interest paid in the form of a loan fee was not, however, at issue in that controversy, and there is more recent authority to the effect that such an item need not necessarily be amortized. See *James V. Cole,* 64 T.C. 1091, 1106 n. 10 (1975).

Although *Anover* is not applicable in this instance, the result for which respondent contends is not necessarily precluded for that reason. For a taxpayer on the cash method of accounting is ordinarily entitled to deduct interest when it is paid; but he may not do so where to deduct such an item will result in a material distortion of his income. *Andrew A. Sandor,* 62 T.C. 469, 477-478 (1974), on appeal (9th Cir., Sept. 30, 1974). In such a case respondent is empowered by section 446(b)[6] to require that the interest expense item be accounted for in some other way in order that the income of the taxpayer be clearly reflected in annual reporting for Federal income tax purposes. *G. Douglas Burck,* 63 T.C. 556 (1975), on appeal (2d Cir., July 28, 1975).

Existing authority does not define precisely what constitutes a material distortion of income, but such a distortion is likely to be found when the amount of an interest expense item is substantially in excess of what might normally be expected in an arm's-length transaction structured without special regard to tax consequences. See *James V. Cole, supra* at 1104 n. 5.

In this instance the lenders insisted that as a precondition to their making a loan of $900,000, the borrowers pay $36,000 of interest in the form of a fee. Lending institutions dealing with their customers at arm's length often require that as a pre-

---

[6] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

requisite to obtaining a loan their customers pay in the form of such a fee, a certain amount of interest over and above that stated in the note. We therefore hold that to deduct the $36,000 loan fee in the year of payment did not result in a material distortion of income.

The second item in issue is the $44,000 of prepaid interest.

On December 28, 1970, petitioner and Howard each paid $22,000 of their own volition, to be applied against interest to accrue on the construction loan in 1971.

We have first to decide if the $44,000 did indeed represent interest paid in 1970 for purposes of section 163(a). See *Andrew A. Sandor, supra* at 482. Basic to the resolution of that issue is whether the $44,000 might have been refunded under any circumstances in 1970. In this connection we note that the borrowers were entitled to prepay the principal of the construction loan. To have done so would have terminated the accrual of interest. However, had the borrowers availed themselves of this privilege prior to 1971, the entire $44,000 of interest prepaid for that year would not thereupon have been refunded. For the borrowers would thereby have rendered themselves liable for a prepayment penalty equal to 180 days' interest on the original principal of the loan, computed at an annual rate of 9 percent. Such a penalty is interest within the meaning of section 163(a). *General American Life Insurance Co.,* 25 T.C. 1265 (1956). We therefore hold that to the extent of the penalty, the $44,000 was a payment of interest made in 1970. *John Ernst, supra.* To the extent the $44,000 exceeded the prepayment penalty, it would clearly have been refunded in 1970, had the loan been prepaid during that year. For this reason the portion of the $44,000 which exceeded the penalty was not a payment of interest but a deposit and therefore not deductible in 1970. *R. D. Cravens,* 30 T.C. 903 (1958).[7] In making this holding we are not unmindful that Cravens was reversed by the United States Court of Appeals for the Tenth Circuit in *Cravens v. Commissioner,* 272 F.2d 895 (1959), a decision binding upon us in this instance,[8] but in our opinion the decision of the Tenth

---

[7] See Asimow, "Principle and Prepaid Interest," 16 U.C.L.A. L. Rev. 36, 69 n. 158 (1968).

[8] See *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

Circuit to reverse our holding was prompted by considerations irrelevant to the case now before us.

In *Cravens* the taxpayer owned and operated a ranch on which he raised livestock. In December 1953 he considered selling his herd because drought conditions made it difficult to obtain feed. He decided that he would keep the herd, however, if he could be assured of obtaining feed in the forthcoming year.

Because of the shortage the taxpayer could not induce his supplier to agree to sell him specific quantities of feed at a specific price, but because he agreed to pay $50,000 in advance, the supplier did agree to give Cravens preferential treatment over his other customers. The $50,000, paid late in December 1953, was to be applied against the price of feed eventually purchased and, to the extent it was not so applied, to be refunded. Because the $50,000 was refundable, it was held by this Court that the $50,000 was not paid in 1953, but only deposited. The Court of Appeals reversed our decision because by paying the $50,000 in advance, the taxpayer secured a promise of preferential treatment from his supplier. In the case now before us, no advantages were secured by prepaying $44,000 of interest. The decision of the Court of Appeals in *Cravens v. Commissioner* is therefore inapposite.

We have held that to the extent of the penalty for the prepayment of principal, the $44,000 represented interest paid in 1970. Therefore to the extent of the penalty, the item would ordinarily be deductible in 1970. That amount, however, was meant to be applied against interest to accrue in 1971. For this reason respondent contends that its being deducted in 1970 would result in a material distortion of income.

Typically a portent of a material distortion of income is the deduction in a single year of interest relating to a period of more than 12 months. See *Andrew A. Sandor, supra.* In such cases a distortion may result from the cumulation in a single year of deductions related to a period of longer than 1 year. See *James V. Cole, supra.*

The item now under consideration can in no event exceed the interest which would become payable on the construction loan in a period of approximately one-half year's duration. Respondent nevertheless contends that a material distortion may result from the cumulation of that item and the loan fee. We disagree; for stated interest relating to a period of 1 year or less and a loan fee

might typically be paid in a single year in a transaction structured without regard to tax consequences. *James V. Cole, supra* at 1104 n. 5.

The relatively brief period to which the prepayment in issue relates is a factor to be given considerable weight in determining whether there has been a material distortion of income, but it is by no means dispositive of the issue. In *G. Douglas Burck, supra,* we held that prepayment of a single year's interest materially distorted income where the prepayment offset an unusually large item of income realized during the year in issue. In this instance, however, there are no circumstances comparable to those in *Burck.*

Accordingly, we hold that to the extent of the penalty for the prepayment of principal, the $44,000 of prepaid interest was deductible in 1970.

Petitioner contends that HLI is entitled to deduct the items in issue in full.

Respondent contends that when HLI acquired a one-half interest in the Ventura property, a partnership was formed in which HLI's distributive share of income and losses was 50 percent, and that therefore HLI is entitled to deduct only one-half of the items in issue insofar as they may be deductible.

The mere coownership of property does not constitute a partnership for purposes of Federal income taxation. A partnership may, however, come to exist if the coowners use the property in a business activity conducted by them either directly or through an agent. Sec. 301.7701-3, Proced. & Admin. Regs.

The record discloses that HLI's relationship with Anchorage entailed considerably more than the simple coownership of property. Anchorage was responsible for the management of the Villa Scandia and was compensated for its services out of the gross rents realized on the complex. In the management of the complex by Anchorage we perceive sufficient business activity to support the conclusion that a partnership did exist in which HLI's distributive share was 50 percent. We nevertheless hold that insofar as the items in issue are deductible, HLI is entitled to deduct them.

Generally, a partner's distributive share of a partnership deduction is determined with reference to his distributive share of the partnership's taxable income or loss. A particular deduction may, however, be specially allocated to the partner

who bears the economic burden of the expenditure underlying the deduction. See *Stanley C. Orrisch,* 55 T.C. 395 (1970), affd. per curiam (9th Cir. 1973).

As a precondition to HLI's participation in the Villa Scandia project, it was agreed that petitioner and Howard would pay the first $80,000 of interest to accrue on the construction loan. This obligation was satisfied when the items in issue were paid. We sustain the allocation to HLI of the deductions relating to those items because the economic burden of them was borne by petitioner and Howard.

*Decision will be entered under Rule 155.*