T.C. Memo. 2003-81


UNITED STATES TAX COURT


PETER U. AND MARY M. BOEHME, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6668-00.                    Filed March 20, 2003.


        M (who together with her husband, P, filed joint
returns for the audit years) assigned her right to
receive certain future annual lottery payments in
exchange for a lump-sum payment to her by W of
$400,000.  M used $250,000 of the $400,000 to repay
loans to M, which had been secured by the future annual
lottery payments.  Of the $250,000, $186,000
represented repayment of the outstanding principal
amount of the loans and the $64,000 balance qualified
as the payment of interest.

        1.  <u>Held</u>: M's right to receive certain future
annual lottery payments does not constitute a capital
asset.  <u>Davis v. Commissioner</u>, 119 T.C. 1 (2002)
followed.

        2.  <u>Held</u>, <u>further</u>, the $400,000 that M received
from W is ordinary income.

3.  Held, further, the $64,000 interest payment constituted the payment of nondeductible "personal interest" under sec. 163(h), I.R.C.


Peter U. Boehme and Mary M. Boehme, pro sese.

Ronald T. Jordan, for respondent.


MEMORANDUM OPINION


HALPERN, Judge:  By notice of deficiency dated March 31, 2000, respondent determined deficiencies in petitioners' Federal income tax for 1995 and 1996 (the audit years) in the amounts of $2,985 and $140,857, respectively.  After concessions, the issues remaining for decision are (1) whether $400,000 received by petitioner Mary M. Boehme in 1996 in exchange for her right to receive certain future annual lottery payments is ordinary income or capital gain, and (2) whether petitioners are entitled to deduct, for 1996, $64,000 paid by Mary in connection with the repayment of loans to her secured by her lottery winnings. Petitioners raised the latter issue during a hearing in lieu of trial (the hearing) without objection by respondent.[1]

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and

---

[1]  Certain adjustments to petitioners' dependency exemptions and schedule A itemized deductions for 1996 are derivative of the adjustments at issue and will be resolved by our resolution of those adjustments.

all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated under Rule 122. The facts stipulated by the parties are so found. The stipulation of facts (including facts stipulated at the hearing), with accompanying exhibits, are incorporated herein by this reference.

Hereinafter, petitioners (husband and wife) will be referred to individually as Peter and Mary. At the time the petition was filed, petitioners resided in Mooresville, Indiana.

The following is a summary of the facts necessary for our discussion.

In 1991, while petitioners were residing in Colorado, Mary won $1.5 million from the Colorado State Lottery, which was to be paid over a 25-year period in annual payments commencing October 10, 1991, and ending October 10, 2015. In order to make the 25 lottery payments, the Colorado State Lottery purchased an annuity and named Mary as the beneficiary.

On July 19, 1995, September 30, 1995, November 3, 1995, and March 7, 1996, Mary received four separate loans (the loans) from Metwest Services of Spokane, Washington (Metwest). As collateral for the loans, Mary pledged 12 future lottery payments (the 12 future lottery payments), which were due to be paid to her on

October 10, 1996, through October 10, 2007, in the following amounts, before applicable tax withholdings:

| Payment Date | Gross Amount |
|---|---|
| Oct. 10, 1996 | $44,968 |
| Oct. 10, 1997 | 46,631 |
| Oct. 10, 1998 | 48,356 |
| Oct. 10, 1999 | 50,145 |
| Oct. 10, 2000 | 52,000 |
| Oct. 10, 2001 | 53,924 |
| Oct. 10, 2002 | 55,919 |
| Oct. 10, 2003 | 57,988 |
| Oct. 10, 2004 | 60,133 |
| Oct. 10, 2005 | 62,357 |
| Oct. 10, 2006 | 64,664 |
| Oct. 10, 2007 | 67,056 |
| Total | 664,141 |

On April 30, 1996, Mary and Woodbridge Financial Corp. (Woodbridge) executed a "Lottery Prize Assignment Agreement" (the assignment agreement) pursuant to which Mary assigned to Woodbridge her rights to receive the 12 future lottery payments, before applicable tax withholdings, in exchange for a lump-sum payment of $400,000 payable within 5 days after the Colorado State Lottery and the annuity company funding the lottery payments had given their approval of the assignment.

On May 6, 1996, Mary and Woodbridge executed an addendum to the assignment agreement (the addendum) pursuant to which the parties agreed that Mary would use up to $250,000 of the $400,000 to be received pursuant to the assignment agreement to repay the balance due on the loans (anticipated not to exceed $250,000 by Mary and Woodbridge), and that Woodbridge would pay directly to Mary any outstanding balance in excess of $250,000. The parties

intended that Mary retain at least $150,000 after repayment of the outstanding balance of the loans.  In August 1996, $250,000 was paid in satisfaction of the balance due on the loans, and $150,000 was received and retained by Mary.

On Schedule D, Capital Gains and Losses, of their 1996 return, petitioners reported a $264,000 long-term capital loss arising out of the foregoing transactions.  That loss was derived by treating $400,000 as the sales price or amount realized by virtue of Mary's assignment of the 12 future lottery payments to Woodbridge and treating the gross amount of the assigned payments ($664,000) as Mary's basis in such payments.  Petitioners then claimed a capital loss deduction of $3,000 in computing their total income for 1996.  Respondent's notice of deficiency issued on March 31, 2000, disallowed the $3,000 deduction and determined that the transaction with Woodbridge resulted in $400,000 of ordinary income to petitioners.  During the hearing, petitioners conceded that the entire $400,000 is includable in income, but they maintain that it should be treated as capital gain.[2]

---

[2]  Although the matter is not specifically addressed by the parties, they appear to agree that the issue is whether to characterize the $400,000 as ordinary income or as long-term capital gain.  Petitioners originally reported the transaction as generating long-term capital loss, and respondent has not raised an issue as to petitioners' holding period for the assigned right to the 12 future lottery payments.  We, therefore, assume that respondent agrees that such right, which arose in 1991, had been held for more than 1 year at the time of its sale to Woodbridge in 1996; and that, assuming such right constitutes a capital
(continued...)

The principal amount of the loans, for which the 12 future lottery payments served as collateral, was $186,000, $100,000 of which was used to construct or improve petitioners' personal residence. There is no evidence in the record as to petitioners' use of the other $86,000. Petitioners' residence did not serve as additional collateral or security for the loans, and that property was not mortgaged in connection with the loans. The $250,000 loan discharge payment consisted of $186,000 in repayment of the loans and $64,000 of interest or of a combination of interest plus penalties for early repayment.[3] Petitioners seek to deduct the $64,000 payment, which, if allowable, would partially offset the inclusion of the $400,000 paid by Woodbridge as consideration for the 12 future lottery payments in gross income.

---

[2](...continued)
asset, its transfer would give rise to long-term capital gain. See sec. 1222(3).

[3] During the hearing, Peter acknowledged that some portion of the $64,000 additional payment constituted a penalty for prepayment of the loans. In his brief, respondent characterizes the entire $64,000 as accrued interest. The distinction is of no consequence because loan prepayment penalties are generally treated as interest for Federal income tax purposes. See 12701 Shaker Blvd. Co. v. Commissioner, 36 T.C. 255, 257-259 (1961), affd. 312 F.2d 749 (6th Cir. 1963) (loan prepayment penalty deductible as interest in the year of payment); see also Lewis v. Commissioner, 65 T.C. 625, 630 (1975); Gen. Am. Life Ins. Co. v. Commissioner, 25 T.C. 1265, 1268 (1956); Rev. Rul. 57-198, 1957-1 C.B. 94. Therefore, we shall treat the issue as solely involving the deductibility of a $64,000 interest payment.

## Discussion

### I.  The Capital Gain Issue

The issue in dispute is whether the $400,000 that Mary received in exchange for her assignment of the 12 future lottery payments to Woodbridge is ordinary income or long-term capital gain.  Resolution of that issue depends upon whether Mary's right to receive the 12 future lottery payments constitutes a capital asset within the meaning of section 1221.

The question of whether the right to receive future lottery payments, which represent a portion of the total anticipated payout, constitutes a capital asset does not present an issue of first impression.  In Davis v. Commissioner, 119 T.C. 1 (2002), we held that the right to receive such payments does not constitute a capital asset within the meaning of section 1221.[4] In that case, we provided a thorough analysis of the caselaw which led us to that result.  No purpose would be served by repeating the legal analysis in Davis, and we refer to that analysis in support of our holding herein that (1) petitioners'

---

[4] In Davis v. Commissioner, 119 T.C. 1 (2002), the taxpayers assigned a portion of each of 11 future annual lottery payments out of a total of 14 such payments that they were entitled to receive.  Id. at p.3.  In this case, Mary assigned all of the 12 future lottery payments, which also represented a portion of the total future payments that she was entitled to receive.  We do not view that distinction as material, and we view the lottery payment right assigned in Davis as, in substance, identical to the lottery payment right assigned in this case for purposes of deciding whether such right constitutes a capital asset.

right to receive the 12 future lottery payments does not constitute a capital asset within the meaning of section 1221, and (2) the $400,000 received by petitioners from Woodbridge in exchange for that right constitutes ordinary income. Accord United States v. Maginnis, 89 AFTR 2d 2002-3028, 2002-2 USTC par. 50,494 (D. Or. 2002).

II. Deductibility of the $64,000 Interest Payment

A. Introduction

During the hearing, Peter agreed that $100,000 of the proceeds of the loans was used to construct or improve petitioners' personal residence, such residence was not used as collateral for the loans, and no mortgage was placed on the property in connection with the loans. In light of those stipulated facts, respondent argues that, with respect to individuals, section 163(h)(1) denies any deduction for "personal interest", and that there is no evidence to indicate that petitioners' interest payments fall within any of the exceptions to the definition of "personal interest" set forth in section 163(h)(2).[5]

---

[5] Sec. 163(h)(2) defines "personal interest", in pertinent part, as follows:

(2) Personal interest.--For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than--

(continued...)

B.  Applicability of Section 163(h)(2)(D)

In particular, respondent argues that petitioners' interest payments fail to satisfy the requirements for the exception provided in section 163(h)(2)(D) for "qualified residence interest".  That is because, although petitioners' principal residence meets the definition of a "qualified residence" (see sec. 163(h)(4)(A)(i)(I)), and although the loans constituted "acquisition indebtedness" (which, pursuant to section 163(h)(3)(B)(i)(I), includes indebtedness "incurred in * * * constructing, or substantially improving any qualified residence"), repayment of the loans was not secured by such residence as required by section 163(h)(3)(B)(i)(II).

We agree with respondent that, based upon the stipulated facts, the $64,000 interest payment does not constitute "qualified residence interest" within the meaning of section 163(h)(2)(D) and (3).

---

[5](...continued)
        (A) interest paid or accrued on indebtedness
    properly allocable to a trade or business (other
    than the trade or business of performing services
    as an employee),

        (B) any investment interest (within the
    meaning of subsection (d)),

         *    *    *    *    *    *    *

        (D) any qualified residence interest (within
    the meaning of paragraph (3)),

C.  Applicability of Section 163(h)(2)(A)

Petitioners argue for the first time on brief that the
$64,000 interest payment is deductible under section 163(h)(2)(A)
as "interest paid or accrued on indebtedness properly allocable
to a trade or business".  We assume that that argument represents
an attempt by petitioners to link the loans to Mary's business
use of petitioners' personal residence.  The Schedule Cs included
in petitioners' returns for the audit years indicate that Mary
was engaged in a business (conducted on a cash basis) referred
to variously as "model train painting" (1995) or "professional
custom painting" (1996).  The Form 8829, Expenses for Business
Use of Your Home, for 1995 states that 37.96 percent of
petitioners' residence was used regularly and exclusively for
business.  For 1996, such business use percentage is stated to be
15.4 percent.

As a general rule, this Court will not consider issues
raised by a party for the first time on brief when to do so will
prevent the opposing party from presenting evidence or arguments
that might have been offered had the issue been timely raised.
Graham v. Commissioner, 79 T.C. 415, 423 (1982).  In this case,
respondent notified the Court of his intention not to file a
reply brief for the reason that his opening brief "adequately
disposes of the relevant factual and legal aspects of this case."
Respondent has thereby failed to object to petitioners' argument

on the basis of timeliness. Therefore, we shall consider petitioners' argument on the merits.

On the basis of the record before us, we decline to hold that any portion of the $64,000 interest payment is deductible pursuant to section 163(h)(2)(A). In order to fall within that provision, an interest payment must qualify as "[i]nterest expense allocated to a trade or business expenditure". Sec. 1.163-8T(a)(4)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). A "trade or business expenditure" is one that has been incurred "in connection with the conduct of * * * [a] trade or business". Sec. 1.163-8T(b)(7), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). There is nothing in the record to indicate that any portion of the loans was used to modify or improve that portion of petitioners' residence devoted to the conduct of Mary's business. In fact, the Forms 8829 attached to the returns for the audit years indicate that none of the proceeds of the loans was used for such purpose.[6] Therefore, we find that no portion of the $64,000 interest

---

[6] The Form 8829 for 1995 states that, out of a total area of 3,240 square feet, 1,230 square feet were used "regularly and exclusively" for business. According to the Form 8829 filed for 1996, the comparable figures are 4,090 square feet (total area) and 630 square feet (business use area). Thus, while total area increased between 1995 and 1996, presumably as a result of the improvement paid for by a portion of the proceeds of the loans, the amount devoted to business use decreased by almost 50 percent during that same period.

payment is excepted from the definition of nondeductible "personal interest" pursuant to section 163(h)(2)(A).

D.  Applicability of Section 163(h)(2)(B)

Petitioners' Exhibit 13, placed in evidence during the hearing, consists of a copy of the instructions for preparing I.R.S. Form 4952, Investment Interest Expense Deduction (the Form 4952 instructions). At the hearing, Peter noted that the Form 4952 instructions state that property held for investment includes property that produces income from annuities. Although petitioners have failed to elaborate further, either at the hearing or in their brief, we interpret Peter's introduction of the Form 4952 instructions as an attempt to argue that at least a portion of the $64,000 interest payment is deductible as "investment interest" pursuant to section 163(h)(2)(B), and, more specifically, that such interest was "paid * * * on indebtedness properly allocable to property held for investment" (i.e., the annuity purchased by the Colorado State Lottery to fund the lottery payments to Mary). Sec. 163(d)(3)(A).

Assuming that we have accurately described petitioners' argument, we find it to be without merit. The annuity allegedly "held for investment" was held by the Colorado State Lottery, not by Mary who incurred the interest expense. More significantly, petitioners explicitly stipulated that the loans, to the extent of $100,000, were used to purchase or improve petitioners'

principal residence, which does not qualify as "property held for investment".  See sec. 163(d)(5)(A).  (As noted previously, there is no evidence in the record as to petitioners' use of the $86,000 balance of the loans.)  Thus, the $64,000 interest payment is not allocable to an "investment expenditure", which is defined, in pertinent part, as "an expenditure * * * properly chargeable to capital account with respect to property held for investment".  See sec. 1.163-8T(a)(4)(C), (b)(3), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987).  As a result, no portion of the $64,000 interest payment qualifies as "investment interest" within the meaning of section 163(h)(2)(B).

E.  Conclusion

The $64,000 interest payment constituted the payment of nondeductible "personal interest" under section 163(h).

To reflect the foregoing,

Decision will be entered
under Rule 155.