CHRIS H. AND HAMPTON H. MAGRUDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Magruder v. Commissioner
Docket Nos. 39680-84; 39139-85.
United States Tax Court
T.C. Memo 1989-169; 1989 Tax Ct. Memo LEXIS 172; 57 T.C.M. (CCH) 117; T.C.M. (RIA) 89169; April 17, 1989. Launch M. Magruder, Jr. and Jack D. Warren, for the petitioners. John F. Driscoll, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Amount
1979
$  5,257
1980
4,076
1981
17,865
1983
5,303
After concessions by the parties,[1] the issues for decision are: (1) Whether for 1979, 1980, and 1981, petitioners may deduct the cost of lunches petitioner Chris H. Magruder [2] paid for hospital employees who performed laboratory work for a partnership of which petitioner was a partner. *174 (2) Whether for 1979, 1980, 1981, and 1983, petitioners may deduct unreimbursed travel and entertainment expenses petitioner incurred in connection with services he performed for corporations for which he served on their boards of trustees. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Greenwood, South Carolina, at the time they filed their petition with the Court. Lunches for medical technologists Petitioner is a physician, specializing in pathology. [3] He began practicing medicine in 1958 and has practiced in the Greenwood, South Carolina, area since 1963. During the years in suit and afterwards, petitioner was a partner in Carolina Pathology Associates (hereinafter referred to as "the partnership"), containing at various times between four to five partners (hereinafter collectively referred to as "the partners". *175 [4] All of the partners are pathologists. The partnership had contracts during the years in suit with Self Memorial Hospital, Greenwood, South Carolina; Abbeville Hospital, Abbeville, South Carolina; and Bailey Hospital, Clinnon, South Carolina. Neither the partnership agreements nor the hospital contracts were submitted at trial and are not in the record. *176 Petitioner handled most of the work in the out-of-town hospitals in Clinnon and Abbeville. Except for patient bone marrow tests, the partners' medical practice involves relatively little patient contact. Most of the work the partners do as pathologists is referred from other doctors through their work at the hospital; most of the tests are performed at the hospital. The partnership is paid through its contracts with the hospitals and for fees for each pathology service it performs. The more hospitals the partnership services under contract and the more services the partners perform, the more fees the partnership earns. Pursuant to the contract with each hospital, the partners direct all of the laboratory testing in the hospital, including the typing and cross-matching of blood, the culturing for microorganisms, the blood chemistries, toxicology, hematology blood counts, etc., and all the diagnoses of blood diseases. The actual testing is done by medical technologists employed by the hospital. The partners direct the activities of these medical technologists. By contract, the partners are responsible for all of the work done by the medical technologists. Each partner is responsible *177 for fulfilling the requirements of the contracts with the hospitals. The structure of the laboratory is as follows. The pathologists are the highest level of supervision. At the next level of supervision are a laboratory manager, a chief technologist, and an assistant chief technologist. Immediately under these individuals are supervisors for each department, such as chemistry, hematology, bacteriology, etc. The medical technologists are under a department supervisor. During the week, petitioner's communication with the medical technologists is through two levels of management. The medical technologists are required to work on weekends; approximately one third of the medical technologists (a little less than twenty) work each Saturday. The department supervisors and the chief technologists are not required to work on weekends. One of the partners has to work at the hospital each Saturday. Consequently, petitioner works every third Saturday, and on these days, is the direct supervisor of the medical technologists who also are working in the laboratory that day. [5]
*178 On the Saturdays he works at the hospital, petitioner routinely purchases lunch for the medical technologists also working that day. The lunches are brought into a hospital conference room. Petitioner and the medical technologists then eat lunch together and discuss matters relating to the work being performed, a variety of medical problems, and other topics. Petitioner's primary purpose in providing the lunches is to further the management relationship between himself and the technologists and to give him the opportunity to discover problems in the laboratory about which he might not otherwise learn. It also gives him an opportunity to develop the good will of the technologists. Petitioner considers these meetings to be a valuable contribution to his ability to do his job as a pathologist. Petitioner's income depends on the work done by the medical technologists. Petitioner felt that if the technologists did poor work, he would lose his job. On his Federal income tax returns for 1979, 1980, and 1981, petitioner reported net income from the partnership of $ 195,900, $ 235,096, and $ 242,559, respectively. If petitioner had not had the luncheon discussions with the medical *179 technologists, they would have eaten their lunches with other hospital employees and petitioner would have eaten his lunch with other doctors. Consequently, the communication between petitioner and the medical technologists fostered by the lunches would not have existed. Physicians at the hospital other than petitioner buy food for hospital employees on occasion. One of petitioner's partners buys something, such as donuts, for everyone once a week. Petitioner does not know if the junior partner in the partnership buys anything for the medical technologists. The partnership gives the hospital laboratory employees a Christmas bonus. The medical technologists' regular salary is paid by the hospital. Petitioners claimed deductions for lunches for the medical technologists on their Federal income tax returns as unreimbursed entertainment expenses for the following years and amounts: Year
Amount
1979
$   834
1980
1,859
1981
892
Respondent disallowed the deductions petitioners claimed for these lunches. Respondent has stipulated that for 1979 and 1980 petitioners have provided documentary evidence regarding the purchase of these lunches which satisfy the *180 amount, time, and place requirements of section 274. [6] Respondent has made no concession regarding documentary evidence pertaining to 1981. Travel and entertainment expenses
During 1979 through 1983, petitioner was director of laboratories at Self Memorial Hospital, Abbeville Hospital, and Bailey Hospital. [7] He also was the epidemiologist [8] at one or more of these hospitals by contract and Chairman of the Infection Control Committee. The record is not clear as to which hospital or hospitals petitioner was the epidemiologist. Petitioner further was active in cancer therapy using whole body hyperthermia. *181 In addition to practicing medicine, petitioner is an investor in securities, oil, and real estate. He also serves as a director of four public companies: Eastover Corporation (hereinafter referred to as "Eastover") (commencing in 1977); [9] Citizens Growth Properties (commencing in 1982); First Carolina Investors (commencing in 1982); and Congress Street Properties (commencing in 1984). At the time he became a member of Eastover's board of trustees, petitioner owned 15,000 shares of stock of Eastover, having a cost of $ 6 per share ($ 90,000 in total). All of the corporations upon whose board of directors petitioner serves are publicly traded entities. Eastover owns shares in Citizens Growth Properties and First Carolina Investors; Congress Street Properties is a wholly-owned subsidiary of Eastover. Citizens Growth Properties is an equity real estate investment trust managed by Eastover. *182 Petitioner agreed to serve on Eastover's board of trustees to acquire general business knowledge, to protect his investment in the corporation, and to receive directors' fees. He would have agreed to serve on the board even if Eastover paid its trustees no compensation. Petitioner gained a wealth of business knowledge from working on Eastover's board of trustees. This knowledge has helped him throughout his professional career. Petitioner first purchased stock in Eastover in 1975 through Leland Speed (hereinafter referred to as "Speed"), a stockbroker in the securities business in Jackson, Mississippi. Petitioner had invested in securities through Speed for approximately twenty years before the Eastover investment. Speed became a member of Eastover's board of trustees in 1975. Speed advocated a management program for Eastover which involved his assuming operating control over the corporation, moving its headquarters to Jackson, Mississippi, and improving its financial condition. He became president of Eastover on June 1, 1978, and continued in that position beyond the years in suit. When Speed first became associated with Eastover, the financial condition of the corporation *183 was poor. In 1975 the corporation had a bank debt of approximately 50 million dollars. Its net worth had dropped from 24 million dollars to slightly below eleven million dollars. The corporation lost four million dollars in 1976 and six million dollars in 1977. When Speed assumed managerial control over Eastover, there was an extreme effort to keep the expenses of the corporation as low as possible. Its management was concerned with survival and operated under a policy of frugality. During 1977, Speed's management program for Eastover was to have the corporation improve its financial posture by initially eliminating its debt, by converting its nonearning assets to earning assets, and, when it ultimately had sufficient funds, by acquiring stock in similar companies thereby enabling Eastover to take control of those companies and to place Eastover's board members on the boards of directors of the acquired companies. Net income for Eastover for 1978, 1979, 1980, 1981, 1982, and 1983, respectively, was $ 1,540,000, $ 4,688,000, $ 2,135,000, $ 3,941,000, $ 3,367,000, and $ 3,939,000. Eastover's board of trustees resumed the payment of cash dividends in 1981, paying out $ .40 per *184 share during the year, and establishing a $ .10 per share quarterly rate. Stock dividends also were declared in 1982 and 1983. In 1978, Eastover had a staff of five people. Because of its financial circumstances and small staff at that time, its management expected the directors to stay well informed on the company's situation and its assets. Its management also expected the directors to help it identify target companies in which the corporation might be interested. In 1983, Eastover had thirty employees. At the time of trial, Eastover had assets in thirty states. After his election to Eastover's board of trustees, petitioner participated in the corporation's program of having its directors assist in evaluating various investment opportunities for Eastover. Petitioner received no direct compensation for his work in evaluating these investment opportunities. During 1976, Eastover paid $ 3,000 annually to each trustee as remuneration for their services as director and $ 250 and actual expenses for attendance at each meeting of the board of trustees or a committee established by the trustees. However, the board of trustees voted in late 1976 or early 1977, effective March 1, 1977, to *185 cease to provide the annual compensation to the directors. Thus, when petitioner first was elected to Eastover's board of trustees, the directors received no annual compensation for their services to the board. The directors continued to receive $ 250 and actual expenses for attendance at each meeting of the board or a committee established by the board. During 1979, 1980, 1981, 1982, and 1983, petitioner received directors' fees of $ 4,250, $ 4,000, $ 6,800, $ 12,106, and $ 22,150. Since petitioner's election to Eastover's board, there has been no formal change in the director reimbursement policy. Eastover's board of trustees had an informal agreement among themselves that they would be very frugal in requesting corporate reimbursement for attending board meetings and would not ask for reimbursement of expenses actually unnecessary for their attendance at the board meetings. On some trips to Eastover's board meetings, petitioner also engaged in other business-related activities. Petitioner made various trips during the years in suit for which he incurred travel and entertainment expenses as detailed below. 1979
On January 10, 1979, petitioner attended a National *186 Association of Real Estate Investors Trust meeting in Palm Beach, Florida. After attending the meeting, petitioner flew to New Orleans, Louisiana, to attend an Eastover board of trustees meeting. Eastover reimbursed petitioner only for those expenses he incurred in New Orleans and for the price of airfare from Greenville, South Carolina, to New Orleans and back. On February 13, 1979, petitioner attended a pathology meeting in Colorado. On his return from Colorado, he stopped in Dallas, Texas, and inspected some properties on behalf of Eastover Corporation. Respondent allowed petitioner a deduction for the expenses he incurred in attending the pathology meeting; respondent did not allow a deduction for the expenses incurred in Dallas, which included the cost of renting an automobile to inspect the property there. On April 2, 1979, petitioner attended a meeting of the South Carolina Society of Pathologists in Washington, D.C. During this trip, he rented an automobile to inspect several properties in the Washington, D.C., area on behalf of Eastover. Petitioner does not know what expenses respondent disallowed for this trip. In May, 1979, petitioner traveled by auto with Brett *187 Baird (hereinafter referred to as "Baird"), the Chairman and a director of Eastover, and Speed to inspect several properties on behalf of Eastover. Petitioner returned Speed and Baird to the Atlanta airport to catch their flights back to Jackson, Mississippi. As a result of his transporting Speed and Baird to the Atlanta airport, petitioner incurred hotel expenses of $ 51 in staying overnight in Atlanta. On July 18, 1979, petitioner traveled to New Orleans, Louisiana, where he attended both an American Association of Clinical Chemistry meeting in downtown New Orleans and an Eastover board of trustees meeting at the New Orleans airport. The only New Orleans related expense for which petitioner was reimbursed by Eastover for this trip was his airfare from New Orleans. In September, 1979, petitioner spent one week traveling between El Paso, Texas, Los Angeles, California, and San Francisco, California, to inspect various properties owned by Property Trust of America on behalf of Eastover. The primary purpose of this trip was to investigate possible investment opportunities for Eastover. On October 2, 1979, petitioner traveled to Washington, D.C., to attend a National Association *188 of Real Estate Investors Trust meeting. Eastover paid the registration fee for this meeting. While in Washington, D.C., petitioner and Speed investigated certain properties belonging to ICM Realty, a real estate investment trust in which Eastover had a substantial investment. On November 20, 1979, petitioner attended an annual meeting of the Property Capital Trust Company in Boston, Massachusetts. The purpose for this travel was to enable petitioner to vote a 20,000 share proxy which he had obtained from Baird. Petitioner's motivation in traveling to Boston to attend the annual meeting of the Property Capital Trust Company primarily was to comply with Baird's request. On December 13, 1979, petitioner attended an Eastover board of trustees meeting in New Orleans for which he requested reimbursement from Eastover only for the cost of his airfare to and from the board meeting. Respondent disallowed $ 38 of the unreimbursed expenses claimed by petitioner for this trip. 1980
From February 16 through February 23, 1980, petitioner attended a medical meeting in Colorado. Upon leaving the medical meeting, petitioner traveled to Austin, Texas, where he stayed in a motel owned *189 by Citizens Growth Properties Company. Upon leaving Austin, Texas, petitioner traveled to Baton Rouge, Louisiana, where he stayed in a motel owned by the Dominion Mortgage Company. From March 20 through March 23, 1980, petitioner traveled to Houston, Texas, to attend an Eastover board meeting. During his stay in Texas, petitioner also traveled to the Texas Medical Center, a community health computer facility, and Hycel Company for reasons connected with his practice of medicine. Petitioner was reimbursed by Eastover for all expenses he incurred on this trip with the exception of $ 100 in taxi fares. On May 7, 1980, petitioner traveled to Jackson, Mississippi, in connection with attending an Eastover board meeting. During his stay in Jackson, petitioner rented an automobile for which expense he did not ask Eastover for reimbursement. In June, 1980, petitioner attended a medical meeting in Colorado. On his way to Colorado, he stopped in Cleveland, Ohio, to examine several properties on behalf of Eastover. Additionally, on his way home from Colorado, petitioner traveled to Florida to investigate several properties on behalf of Eastover. Respondent allowed petitioner a deduction *190 for his expenses relating to attending the medical meeting in Colorado. On October 1 through October 5, 1980, petitioner traveled to Los Angeles, California, for a National Association of Real Estate Investors Trust meeting. On October 14, 1980, petitioner traveled to New Orleans to attend an Eastover board meeting. While in New Orleans, petitioner rented a car and incurred other miscellaneous expenses to inspect certain real estate on behalf of Eastover. He did not request reimbursement from Eastover for the car rental or the miscellaneous expenses. The only expense of this trip for which petitioner was reimbursed by Eastover was his airfare. On October 24, 1980, petitioner traveled to St. Louis, Missouri, to an American Society of Clinical Pathology meeting. Petitioner does not know what expenses respondent disallowed for this trip. On November 10 and 11, 1980, petitioner traveled to Jackson, Mississippi, for reasons related to Eastover, some oil investments he possessed, and some cancer research matters. From November 20 through November 23, 1980, petitioner traveled to Jackson, Mississippi, for an Eastover board meeting. The sole expense for which petitioner was reimbursed *191 by Eastover was his airfare. During December 4 through December 12, 1980, petitioner traveled to Atlanta, Houston, and Los Angeles. The majority of this trip was spent in Houston, Texas, where petitioner visited the University of Texas Medical Center for purposes related to his medical practice. Petitioner also went to Parkway Real Estate on this trip. During 1980, petitioner traveled to Columbia, South Carolina, on behalf of Eastover to inspect for potential investment purposes certain property belonging to a company called Piedmont Realty. 1981
From February 13 through February 19, 1981, petitioner attended an Eastover board meeting in New York City, during which dates he also traveled to the Sloane-Kettering Memorial Hospital and the Lydia Hall Hospital for reasons related to his medical practice. During May 21 and 22, 1981, petitioner traveled to New Orleans, Louisiana, for an Eastover board meeting for which he did not ask total reimbursement from Eastover. From August 20 through 25, 1981, petitioner traveled to Jackson, Mississippi, to an Eastover board meeting and, subsequently, to Detroit, Michigan, for a cancer therapy meeting. During 1981, petitioner traveled *192 to New Orleans, Louisiana, where he attended an Eastover board meeting and visited the Tulane Medical School. Petitioner was totally reimbursed by Eastover for this trip with the exception of $ 38. During 1981, petitioner traveled to Naples, Florida, to attend a board of directors' meeting for the Highland Falls Country Club on behalf of Eastover. He was reimbursed in 1982 for this trip. Petitioner thinks the reimbursement was included in his income for 1982. 1983
On February 13, 1983, petitioner attended an Eastover board meeting in New York from which he traveled to New Orleans and Colorado at the expense of National Enterprises. On February 22, 1983, petitioner traveled to Charlotte, North Carolina, for a First Carolina board meeting. During 1983, petitioner traveled to New York for a Citizens Growth Properties board meeting from which he traveled to Jackson, Mississippi, to a cancer research meeting. During 1983, petitioner traveled to a pathology meeting in Colorado. Petitioner thinks respondent allowed him to deduct the expenses relating to this trip. During 1983, petitioner traveled to a blood bank meeting in Greenville, South Carolina. On May 8, 1983, petitioner *193 traveled to Highlands, North Carolina, and met with Speed and other people. On June 2, 1983, petitioner traveled to Jackson, Mississippi, to attend an Eastover board meeting. On June 23, 1983, petitioner traveled to Charlotte, North Carolina, to attend an infection control seminar. On July 20, 1983, petitioner traveled to New York for an Eastover board meeting. On July 26, 1983, petitioner traveled to Charlotte, North Carolina, for a First Carolina board meeting. On June 28 and 29, 1983, petitioner traveled to Jackson, Mississippi, in relation to Eastover, his oil and gas investments, and for cancer research reasons. Sometime in 1983, petitioner traveled to New Orleans to attend a Tulane Medical School meeting and to St. Louis, Missouri, to attend a College of American Pathologists meeting. On November 13 through 16, 1983, petitioner traveled to Jackson, Mississippi, and New Orleans, Louisiana, in connection with an Eastover board meeting. On December 13 through 17, 1983, petitioner traveled to New York for reasons associated with Citizens Growth Properties. Petitioner incurred his various travel expenses in the years in suit for purposes related to his medical practice, *194 his oil investments, his real estate investments, and his association with the corporations upon whose board of directors or trustees he served. For the years in suit petitioner claimed and respondent allowed unreimbursed travel and entertainment expenses, not including lunches for hospital medical technologists or automobile expenses, in the following amounts: 1979
1980
1981 [10]
1983
Claimed
$ 10,383
$ 10,475
$ 10,842
$ 7,121
Allowed
3,708
4,307
7,404
-0-
Disallowed
$  6,675
$  6,168
$  3,438
$ 7,121
*195 Included in these unreimbursed travel and entertainment expenses are expenses petitioner incurred in connection with his traveling to board meetings or inspecting property for Eastover for 1979, 1980, 1981, and 1983, in the following amounts: Year and Amount
Item
1979
1980
1981
1983
Unreimbursed travel
$ 2,555
966
to Eastover board
meetings (Form 2106)
Unreimbursed travel to
3,770
4,714
inspect real estate as
trustee of Eastover
(Form 2106)
Unreimbursed expenses
$ 2,943
relating to services on
Eastover's board (Form
2106)
Unreimbursed travel
$ 7,121
and entertainment
expenses (Schedule C)
Total
$ 6,325
$ 5,680
$ 2,943
$ 7,121
Respondent disallowed the deductions petitioners claimed for unreimbursed expenses relating to Eastover. Respondent has stipulated that for 1979, 1980, and 1983, petitioners have provided documentary evidence regarding these unreimbursed travel and entertainment expenses which satisfy the amount, time, and place requirements of section 274. Respondent has made no concession regarding documentary evidence pertaining to 1981 or as to business purpose or relationship *196 for any of the years in suit. At trial petitioner did not present any documentary evidence relating to the travel and entertainment expenses as to the issues of business purpose and relationship involved in this suit for 1979, 1980, and 1983 or as to time, place, amount, business purpose, and business relationship for 1981. OPINION Lunches for medical technologists
First we consider whether petitioner's claimed business expense deductions for the cost of the lunches petitioner purchased for the medical technologists are allowable. Petitioners submit that the lunches for the medical technologists were ordinary and necessary business expenses of petitioner in carrying on his trade or business of being a pathologist. They contend that the lunches were instrumental in establishing working relationships with the medical technologists which served to promote the production of income under the contracts with the hospitals that provided the basis for petitioner's employment income from the hospitals or which served to maintain petitioner's income-producing interest in the contracts. Respondent argues that petitioners are not entitled to a deduction for the cost of the lunches *197 because petitioners have failed to (1) provide sufficient evidence to satisfy the substantiation requirements of section 274; (2) establish a sufficiently direct relationship between petitioner's purchase of the lunches for the medical technologists and his capacity to produce income; (3) establish that the cost of the lunches was an ordinary and necessary business expense of his own trade or business as opposed to being the ordinary and necessary business expense of the partnership; and (4) identify the portion of the lunches expense which is attributable to the cost of petitioner's own meals. We agree with respondent that the cost of the lunches, if considered to be an ordinary and necessary expense, would be an expense of the partnership, not of petitioner. Petitioners have the burden of proving that the cost of the lunches for the medical technologists are allowable deductions. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142 (a). Furthermore, deductions are a matter of legislative grace and each statutory requirement must be satisfied before the deduction can be allowed. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Section *198 162 allows a deduction for reasonable business expenses which are both ordinary and necessary. Deductible business expenses include "ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business." Sec. 1.162-1(a), Income Tax Regs. Whether an expense is ordinary and necessary is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Walliser v. Commissioner,72 T.C. 433, 437 (1979). "Ordinary" has been defined as normal, usual, or customary. It has been interpreted to mean that an expense must have a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962). "Necessary" has been interpreted to mean that the expense must be "appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Heininger, supra at 471; Carbine v. Commissioner,83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Where an expenditure is, by its nature, ordinary *199 and necessary, but is unreasonable in amount, only the reasonable portion qualifies for a deduction under section 162. United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967). No deduction, however, is allowable for personal, living, or family expenses. Sec. 262. In order to be deductible, business expenses generally must be the expenses of the taxpayer claiming the deduction. Hewett v. Commisssioner,47 T.C. 483, 488 (1967). The payment by one taxpayer of the obligation of another is not generally considered an ordinary and necessary expense. Reading Co. v. Commissioner,132 F.2d 306, 311 (3d Cir. 1942), cert. denied 318 U.S. 778 (1943). An exception to this rule exists where a taxpayer expends his own funds in order to protect or promote his own established business for a cost which would be an ordinary and necessary expense of his business. Lohrke v. Commissioner,48 T.C. 679, 684-685 (1967). In general, a partner cannot deduct directly the expenses of a partnership on his income tax return, even if the expenses were incurred personally by the partner in *200 furtherance of the partnership business. Cropland Chemical Corp. v. Commissioner,75 T.C. 288 (1980), affd. without published opinion 665 F.2d 1050 (7th Cir. 1981); Farnsworth v. Commissioner,29 T.C. 1131 (1958), affd. 270 F.2d 660 (3d. Cir. 1959), cert. denied 362 U.S. 902 (1960); Klein v. Commissioner,25 T.C. 1045 (1956); Wilson v. Commissioner,17 B.T.A. 976 (1929). "Ordinary and necessary expenses of a partnership business are properly deducted on the partnership return, and the partner then returns as an individual his distributive share of the net income of the partnership after making such deductions." Wilson v. Commissioner,17 B.T.A. at 979. An exception exists where according to the partnership agreement or partnership practice, a partner is required to pay certain partnership expenses out of his own funds. Cropland Chemical Corp. v. Commissioner, supra;Lewis v. Commissioner,65 T.C. 625 (1975); Wallendal v. Commissioner,31 T.C. 1249 (1959). Petitioners bear the burden of proof on this matter. Rule *201 142(a); Welch v. Helvering, supra.
Based on the record here, we conclude, and so find, that the cost of the lunches for the medical technologists, if considered to be an ordinary and necessary expense, was an expense of the partnership, not of petitioner. The contracts for the performance of the pathological services conducted by the medical technologists were between the partnership and the hospitals. The income for the performance of these services by the medical technologists was partnership income, with petitioner receiving only his distributive share of that income. Petitioners introduced no evidence to show that, through agreement or practice, he was required to pay without reimbursement the cost of the lunches for the medical technologists. Therefore, petitioners have failed to carry their burden of proof on this issue. We hold for respondent on this issue. We have considered petitioners' other arguments on this issue and find them unpersuasive. Since we have found that the cost of the lunches was an expense of the partnership, we do not reach the other arguments on this issue advanced by respondent. Travel and entertainment expenses
Petitioners *202 claim that for the years in suit petitioner incurred travel and entertainment expenses for which he was not reimbursed. Petitioners argue that these unreimbursed expenses are deductible under section 162 [11] as expenses incurred in carrying on petitioner's trade or business of being a pathologist or corporate director. Respondent contends that petitioners are not entitled to a deduction for these expenses because they have failed to provide sufficient evidence to satisfy the substantiation requirements of section 274 or to establish that petitioner was in the trade or business of being a corporate director. Alternatively, respondent argues that, if petitioner was in the trade or business of being a corporate director, petitioners have failed to establish that the expenses were the ordinary and necessary expenses of a corporate director, or were the ordinary and necessary expenses of his own trade or business as opposed to the expenses of the corporations on whose behalf he was acting. Respondent contends further that petitioners may not deduct those expenses of attending Eastover *203 board of directors' meetings for which he failed to request reimbursement. We agree with respondent that petitioners have not satisfied the substantiation requirements of section 274. Expenditures for travel and entertainment are subject to the general requirements of section 162. In addition, they also are subject to the stringent substantiation requirements of section 274 [12] and the Regulations issued thereunder. The Regulations have been held generally in accord with the statute. Sanford v. Commissioner,50 T.C. 823 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969); but see LaForge v. Commissioner,434 F.2d 370 (2d Cir. 1970), remanding 53 T.C. 41 (1969). Failure to comply with the substantiation requirements of section 274(d) precludes deduction of travel and entertainment expenses, even if the expenditures are ordinary and necessary in carrying on a trade or business under section 162. Berkley Machine Works & Foundry Co. v. Commissioner,623 F.2d 898 (4th Cir. 1980), revg. a Memorandum Opinion of this Court, cert. denied 449 U.S. 919 (1980). *204 *205 Section 274 requires that for each expenditure the amount, time, and place of travel or entertainment, the business purpose of the expense, and the business relationship of the person entertained or receiving the gift be substantiated by adequate records or by sufficient evidence corroborating the taxpayer's own statement. Secs. 1.274-5(b)(2); 1.274-5(b)(3), Income Tax Regs. Adequate records are defined in the Regulations as an account book, diary, statement of expense, or similar record prepared or maintained in such a manner that each recording of an element of an expenditure is made at or near the time when, in relation to the making of the expenditure, the taxpayer has full present knowledge of each element of the expenditure (i.e., a contemporaneous recordation), plus such documentary evidence which, in combination, are sufficient to establish each element of an expenditure specified in section 1.274-5(b) of the Income Tax Regulations.Sec. 1.274-5(c)(2), Income Tax Regs.
Absent adequate records, the taxpayer must substantiate each element of every deducted item of claimed expense through his own testimony corroborated with evidence having a high degree of probative value. *206 Sec. 1.274-5(c)(1), Income Tax Regs.; Dowell v. United States,522 F.2d 708 (5th Cir. 1975). Furthermore, where the element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborating evidence must be direct evidence, such as a statement in writing or the oral testimony of the persons entertained or receiving the gift or other witnesses setting forth detailed information about each element, or the documentary evidence described in section 1.274-5(c)(2) of the Income Tax Regs. Where the element is business purpose or business relationship, the taxpayer's testimony may be corroborated through circumstantial evidence. Sec. 1.274-5(c) (3), Income Tax Regs.
Documentary evidence, such as receipts, paid bills, or similar evidence, to support an expenditure are required for any lodging while traveling away from home, and for any expenditure of $ 25 or more. Hotel receipts are sufficient if they contain the hotel name, location, date of the lodging, and separate amounts and charges. Sec. 1.274-5(c)(2)(iii), Income Tax Regs. To be a deductible business expense, the meals and lodging must be incurred while away from the taxpayer's *207 tax home. To be sufficient to substantiate a business meal, a restaurant receipt must contain the name and location of the restaurant, and date and amount of the expenditure. A cancelled check drawn payable to a named payee does not by itself support a business expenditure without other evidence showing that the check was used for a certain business purpose. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.
Unless the business meal exception applies, the taxpayer must establish that the entertainment was directly related to, or where applicable, associated with, the active conduct of the taxpayer's trade or business. Sec. 274(a)(1). For the business meal exception to apply, the taxpayer must establish that food or beverages were furnished under circumstances conducive to business discussion in an atmosphere where there are no substantial distractions to discussion. Sec. 1.274-2(f)(2)(i), Income Tax Regs.
There is no evidence that petitioner maintained an account book, diary, statement of expense, or similar record in which he made a recordation pertaining to the expenditures involved in this case. Consequently, petitioner cannot meet the adequate records requirement. Therefore, *208 to prove his case, petitioner must depend upon his corroborated testimony. At trial, Speed was the only witness to testify except petitioner. Speed testified in a general manner as to petitioner's attitude and activity in relation to Eastover. Speed did not testify in particular as to any specific expenditure at issue in this case. Other courts have found this general type of testimony insufficient substantiation for expenses falling under section 274. See, for example, Dowell v. United States,522 F.2d at 709, where the court disregarded the testimony of "numerous witnesses who testified as to Dowell's dedication to and total absorption in the business affairs of Hillcrest and his own business interests." In Dowell, most of the witnesses testified that Dowell had entertained them at business lunches, etc., but the court found the testimony of those witnesses inadequate because "most of them could not identify with particularity any specific date or dates * * * the place at which they had been * * * on any given date, the specific business discussed, or the amount of expense incurred by Dowell * * *." Dowell v. United States, supra. *209 (Emphasis added.) In Berkley Machine Works & Foundry Co. v. Commissioner, supra, the Fourth Circuit, the circuit to which this case is appealable, considered whether the substantiation requirements of section 274(d) were met by the testimony of a few guests at the taxpayer's island resort. The guest witnesses did not relate specific business discussions to specific trips. The Fourth Circuit stated as follows: Berkley presented what the Tax Court found were adequate records of the place, time, and amount of the contested expenditures, and the Government does not challenge the court's findings as to these elements. It does contest Berkley's substantiation of the business purpose of the trips and the business relationship of the guests. The Company kept no written diary of the Ocracoke trips describing the business purpose for each, and so had to rely on the testimony of some of its guests to corroborate its own statement that the trips had a business purpose. The taxpayer's own statement, as contained in the testimony of its officers, does not provide the "specific information in detail" required by the Regulations; moreover, the corroborative testimony consisted *210 of testimony by only nine of some 1,000 guests during the relevant years, their testimony related to only 12 of 76 trips, and they could not relate specific business discussions to specific trips. The Tax Court considered this testimony sufficient to establish business purpose in light of the absence of any evidence of personal, non-business use of the facility. But we are of the opinion that this sort of general, often conjectural testimony as to business purpose is exactly the sort of unreliable recollection that the substantiation requirements of § 274(d) were designed to foreclose. See Rutz v. Commissioner,66 T.C. 879, 883-84 (1976); Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225, 1235 (1971). The Regulations do allow the corroborative evidence of business purpose to be circumstantial in nature, § 1.274-5(c)(3)(ii); but we do not think that evidence of the nature of the Ocracoke trips in general will support a conclusion that each trip had a business purpose. Cf. Dowell v. United States,522 F.2d at 714. We also conclude that the Tax Court erred in holding that Berkley had adequately substantiated the business *211 relationship of each entertainee at Ocracoke. As the court found, though the taxpayer's witnesses recalled the names of some individual guests, its records contain only a notation of the company whose employees were invited down on a particular weekend. To permit the business relationship element to be established by this kind of evidence, when guests who had no business relationship with Berkley admittedly attended in response to the corporate invitation, would frustrate the purpose of this element of substantiation, intended to prevent deductions for "business-related" entertainment of persons actually having no business relation to the taxpayer. The Tax Court is not incorrect in its conclusion that "it is the substance of the relationship and not the particular form of record-keeping that substantiates business relationship"; but the required "substance" must be clear from the records if a taxpayer is to get the deduction. A business relationship must be established by identification of each person involved in the entertainment deduction, 26 C.F.R. § 1.274-5(b)(1)(iv); if the relationship is, as was the case in Rutz v. Commissioner,66 T.C. 879 (1976), *212 not clear from the name, then the job title should be noted as well. * * * [Berkley Machine Works & Foundry v. Commissioner,623 F.2d at 906-907; emphasis in original.] We are unable to determine if or how much of the expenses here pertained to entertainment. However, the principles of section 274(d) applicable to entertainment are equally applicable to travel expenses. In the instant case, with only one or two exceptions, petitioner did not testify in detail in regard to each expenditure, but simply testified in general terms that he incurred unreimbursed expenses for the trips enumerated above. Petitioners have presented no records containing a recordation of the expenditures at issue. Nor have they presented any documentary evidence such as bills, invoices, statements, receipts, or cancelled checks, for 1981 pertaining to time, place, amount, business purpose, and business relationship and for 1979, 1980, and 1983 pertaining to the correlation of these expenditures to business purpose and business relationship. [13] Petitioners also have presented no schedules specifying the individual expenditures which together compose the expenses in issue. We do *213 not know how much he spent for hotel bills, how much for meals, nor how much for any other purpose. We also do not know for whom each expenditure was incurred or for what purpose. While we are not concerned with time, place, and amount of those expenses for 1979, 1980, and 1983, we have no clue as to their item-by-item correlation with business purpose and relationship. Other than his own testimony, petitioner has presented virtually no proof of the business purpose and business relationship for the disputed expenditures. In addition, for 1981, petitioner has presented no documentary evidence as to time, place, and amount. *214 Speed's testimony was too general to furnish the corroborating evidence pertaining to the business purpose of the travel expenses petitioner incurred, or where appropriate the business relationship of any persons petitioner entertained, on behalf of Eastover. In fact, Speed's only testimony addressing petitioner's business travel for Eastover is found in the following exchange between petitioner's counsel and Speed: Q: Are you made aware of the travel that Herb Magruder performs, and what he is looking at so far as possible acquisitions or dispositions of Eastover Corporation's property is concerned? A: We have no formal reporting structure, but he normally discusses it with me. We stay in close contact. Thus, Speed's testimony does not furnish any information pertaining to the specific expenditures at issue in this case. Had Speed preceded to recite, for example, the specific locations and/or property that petitioner visited for Eastover during the years in issue or had he testified that Eastover owned or considered property in the locations petitioner said he visited for Eastover during the years in issue, much of the missing corroborating evidence pertaining to business *215 purpose of the travel would have been supplied. Unfortunately, that testimony was not presented. Petitioner also failed to present any evidence, such as testimony from hospital or company officials or copies of written agenda corroborating petitioner's testimony that he toured certain facilities or attended certain meetings during the years in issue. We do not question petitioner's credibility here. In fact, we found him to be a straightforward and sincere witness. The Regulations require more than petitioner's testimony, however, to substantiate the claimed expense and the Regulations must prevail. The Regulations under section 274 require that absent adequate records, the taxpayer's testimony be supported by corroborative evidence. Sec. 1.274-5(c)(3), Income Tax Regs. The corroborative evidence must "establish each statutory element -- amount, time, place, and purpose -- of the expenditure with precision and particularity." Dowell v. United States,522 F.2d at 714-715 n.10, quoting Hughes v. Commissioner,451 F.2d 975, 979 (2d Cir. 1971) The business relationship similarly must be established with precision and particularity. Dowell v. United States, supra. *216 Petitioner maintained no contemporaneous diary or log to substantiate the claimed expenses and presented no evidence specifically relating to these expenditures sufficient to corroborate the business purpose or relationship of the claimed expenses for 1979, 1980, and 1983 or the time, place, amount, business purpose, and business relationship for 1981. As petitioners correctly point out, the corroborative evidence necessary to establish business purpose (as well as business relationship) may be circumstantial evidence. See sec. 1.274-5(c)(3), Income Tax Regs. We do not agree with petitioners, however, that the necessary circumstantial evidence required by the Regulations is present in the fact that: petitioner aspired to become a member of other boards; he became a member of Eastover for directors' fees and the business knowledge he would acquire as a result of his services on the board of trustees; he became a member of the board of First Carolina Investors as a result of his service on Eastover's board; he viewed Eastover's board as a stepping stone to service on other boards; he expected directors' fees to be a large primary source of his income when he retired; he expected *217 to be paid for his service as a director; he received increasing amounts of gross income from directors' fees from 1979 through 1986; he was expected to do something in order to receive those fees; and Speed testified that petitioner had done a good job as a director and the activity of an individual who aspired to become a director of several corporations would comport with petitioner's activities on behalf of Eastover. These factors do not provide the "specific information in detail" as to the business purpose or business relationship of the expenditures at issue required by the Regulations. See Berkley Machine Works & Foundry Co. v. Commissioner, supra.Although these factors may go to establish that petitioner was in the trade or business of being a corporate director, they do not furnish with precision and particularity circumstantial evidence as to the purpose or business relationship of each expenditure in issue. See Berkley Machine Works and Foundry Co. v. Commissioner, supra;Dowell v. United States, supra.
Respondent has stipulated that petitioner submitted to him documentary evidence which meets the time, place, and amount *218 elements of section 274 for 1979, 1980, and 1983. Respondent has not stipulated that this documentary evidence meets the purpose or relationship elements. Respondent has made no stipulation regarding documentary evidence for 1981. Petitioner has presented to this Court no acceptable corroborative evidence whatsoever relative to the disputed statutory elements for the claimed expenditures for any of the years in issue. Therefore, we have no choice but to sustain respondent's determination on this issue. We have considered petitioners' other arguments and find them not persuasive. Since we have found that petitioners did not satisfy the substantiation requirements of section 274, we do not reach the other arguments raised by respondent. Because of concessions made by the parties as to other issues, see n.1 supra, a recomputation of the deficiencies is needed. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Petitioners have conceded that respondent's investment interest adjustment for 1981 is correct. The parties have agreed that petitioners are entitled to deduct additional automobile expenses for 1979, 1980, 1981, and 1983 of $ 794, $ 870, $ 1,284, and $ 1,726, respectively, and unreimbursed meals expenses incurred in attending medical conventions for 1979, 1980, and 1981 of $ 350, $ 488, and $ 495, respectively. ↩
2. Petitioner Hampton H. Magruder was not a party to the transactions involved in this case and is a petitioner in this action solely by reason of filing joint Federal tax returns with her spouse. Hereinafter, references to "petitioner" are to Chris H. Magruder.↩
3. Pathology is the branch of medicine concerned with the study of the nature of disease and its causes, processes, development, and consequences. Webster's II New Riverside University Dictionary (1984 ed.)↩
4. The record is inconsistent as to the composition of the partnership. The partnership returns (Forms 1065) for 1979 and 1980 actually indicate that, for those years, the partnership name was "Drs. May & Magruder," and it contained two partners, petitioner and Dr. Hunter W. May, each with a fifty percent interest in the partnership. Schedules attached to petitioner's Federal income tax return for 1981 also indicates the name of the partnership as "Drs. May & Magruder." The record does not show when the name of the partnership changed to Carolina Pathology Associates or when additional partners joined the partnership. The record also does not show whether for 1979, 1980, or 1981, the partnership Drs. May & Magruder included nonpartner associates who were pathologists. Resolution of these inconsistencies is not crucial to the outcome of the case; therefore, we have accepted petitioner's testimony regarding the composition of the partnership for the years in suit as set forth above.↩
5. The senior partner, Dr. May, does not work on Saturdays. Although it is not clear from this record, it appears that the partners work only at Self Memorial Hospital on Saturdays. We must observe that the record here, as with the partnership contracts and hospital contracts, is not satisfactory.↩
6. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
7. It is not clear from the record whether petitioner individually, each of the partners, or the partnership was director of laboratories. The testimony as to this matter is inconsistent. ↩
8. Epidemiology is the branch of medicine that studies epidemics and epidemic diseases. Webster's II New Riverside University Dictionary (1984 ed.) ↩
9. Eastover is an unincorporated business trust. Until May 31, 1978, it was named First Commerce Realty Investors. Initially, Eastover invested principally in short-term construction, development and land loans. As a result of the recession in the real estate industry in the mid-1970's, Eastover acquired numerous properties through foreclosure proceedings against defaulting borrowers, and Eastover's activities were limited to liquidation of undesirable properties and repayment of bank debt. During the years in suit, Eastover was engaged in the continued liquidation of those real estate assets which it did not wish to retain for investment, and in the investment of cash flow in income producing properties or in the shares of other real estate companies. In addition to exploring opportunities for mergers and acquisitions, it also was looking into potential real estate development opportunities.↩
10. The Form 2106, Employee Business Expenses, attached to petitioners' 1981 tax return shows a total of $ 17,583 claimed for 1981 consisting of $ 603 for depreciation, $ 1,995 for entertainment, $ 880 for business telephone, $ 1,316 for professional dues and licenses, $ 1,825 for secretarial expenses, $ 98 for professional insurance, $ 9,739 for business travel, $ 1,069 for legal fees, and $ 58 for other expenses. It appears that the $ 1,995 for entertainment includes $ 892 for lunches for medical technologists leaving $ 1,103 claimed for other entertainment. The explanation of adjustment attached to the statutory notice of deficiency indicates that the $ 17,583 shown on the 1981 return for business travel and entertainment was reduced by $ 4,330; therefore, respondent allowed petitioner a deduction of $ 13,253. From this explanation it appears that respondent reduced only the travel and entertainment portion of the claimed employee business expenses. Based on this, we conclude that for the 1981 petitioner claimed $ 9,739 for travel and $ 1,103 for business entertainment, other than lunches for the medical technologists, for a total of $ 10,842, of which respondent allowed petitioner a deduction of $ 7,404.↩
11. Petitioners have withdrawn their argument that the expenses are deductible under section 212.↩
12. Section 274 in pertinent part reads as follows: SEC. 274: DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) Entertainment, Amusement, or Recreation. (1) In general. - No deduction otherwise allowable under this chapter shall be allowed for any item (A) Activity. - With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (B) Facility. - With respect to a facility used in connection with an activity referred to in subparagraph (A). In the case of an item described in subparagraph (A), the deduction shall in no event exceed the portion of such item which meets the requirements of subparagraph (A). (2) Special rules. - For purposes of applying paragraph (1) (A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities. (B) An activity described in section 212 shall be treated as a trade or business. (C) In the case of a club, paragraph (1)(B) shall apply unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business. * * * (d) Substantiation Required. - No deduction shall be allowed (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or, recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. (e) Specific Exceptions to Application of Subsection (a). - Subsection (a) shall not apply to (1) Business meals. - Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion. * * * ↩
13. Respondent has stipulated that, for 1979, 1980, and 1983, petitioner provided to respondent documentary evidence regarding the travel and entertainment expenses which satisfy the amount, time, and place requirements of section 274. Neither party, however, made this documentary evidence a part of the record or furnished the Court with a breakdown of the disputed expenditures. Thus, other than through inference and use of the generic "travel and entertainment" classification, the Court has been left primarily in the dark as to the connection of business purpose and business relationship to the specific expenditures in issue. Respondent has made no stipulation as to documentary evidence for 1981; thus, petitioners' failure to present at trial the required direct evidence to substantiate time, place, and amount for 1981 precludes any deduction for travel and entertainment for that year regardless of considerations of business purpose and business relationship.↩